JOSEPH V. MILANO *v.* WARDEN OF CONNECTICUT
CORRECTIONAL INSTITUTION, SOMERS, ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued January 4—decision released March 19, 1974

*Bernard D. Gaffney,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellants (defendants).

*Richard S. Cramer,* for the appellee (plaintiff).

SHAPIRO, J.   As an inmate at the Connecticut correctional institution at Enfield, the plaintiff, Joseph V. Milano, together with other inmates, was assigned to a work detail at the residence of the warden of the institution. While working about the residence the plaintiff escaped.   He was apprehended and pleaded guilty to a violation of General Statutes § 53-155 and was sentenced.   He brought a petition seeking a writ of habeas corpus, contending that his escape was in violation of § 53-158, a lesser offense.   The court rendered judgment for the plaintiff.   The defendants, the warden of the correctional institution at Somers and the commissioner of corrections, filed a petition with the trial court seeking certification for appeal from the court's judgment.   Upon the granting of their petition, the defendants have appealed to this court.

The undisputed facts, as found by the court, are as follows:   The plaintiff was sentenced on January 15, 1971, in the Superior Court in Fairfield County to a term of imprisonment of not less than one year nor more than four years in the Connecticut correctional institution at Somers.   He was subsequently transferred to the former Osborn division at Enfield.[1]   On May 27, 1971, while legally confined to the institution at Enfield, the plaintiff and six other inmates were assigned to a lawn maintenance work detail at the residence of the warden.

---

[1] Public Acts, 1969, No. 273, which became § 18-14a, reads in part as follows: "The Connecticut Correctional Institution, Osborn, shall be an institution distinct and separate from the Connecticut Correctional Institution, Somers." In 1971, Public Act No. 154, § 2, changed "Osborn" to "Enfield," the designation shown in § 18-14a of the 1971 Noncumulative Supplement to the General Statutes and presently in § 18-14a of the General Statutes, revised to 1972.

The plaintiff and the other inmates were taken by truck from the institution to the warden's residence and at all times were in the custody of a corrections officer. The residence is about one-quarter of a mile from the last security gate at the institution at Enfield and is located on Walker Drive, a private road which can be approached only from the Enfield institution by a public highway. The residence is not surrounded by a fence and is a part of the prison compound which is the property comprising the total complex of the institutions at Somers and Enfield. There are five residences located on Walker Drive, each owned by the state of Connecticut and occupied by personnel employed at the institutions. Security gates enclose the correctional institutions at Somers and Enfield but not the warden's residence. The plaintiff, while on a work detail at the warden's residence, escaped. The corrections officer who had custody of the plaintiff and the other inmates, at the time of the escape, was unarmed. Later, the plaintiff was apprehended and on May 30, 1972, was presented before the Superior Court on an information charging him with escape from the Connecticut correctional institution at Somers in violation of § 53-155.[2] The plaintiff, represented by a public defender, discussed with him, prior to his plea, the offense with which he was charged, violation of § 53-155, and they also dis-

---

[2] "[General Statutes, revised to 1968] Sec. 53-155. ESCAPE FROM CORRECTIONAL INSTITUTION. Any person legally confined in any correctional institution, except The Connecticut State Farm for Women, who escapes or attempts to escape from such institution or from any other institution to which he has been transferred from such institution or from the custody of any person in whose charge he has been placed by the warden or superintendent of such institution shall be imprisoned not more than ten years."

cussed § 53-158.[3]   The plaintiff was informed by his public defender that § 53-155 covered all types of escape, both inside and outside a correctional institution.   The plaintiff saw the public defender for about ten minutes on May 30, 1972, before he pleaded guilty in the Superior Court in Hartford County to § 53-155.   On June 1, 1972, the plaintiff was sentenced to a term of not less than eighteen months nor more than five years, to be served concurrently with the sentence imposed in Fairfield County.   On June 1, 1972, the plaintiff was delivered to the warden of the Connecticut correctional institution, Somers.

From the foregoing facts the court concluded that the plaintiff, at the time of his escape, was outside the institution at Enfield; that his escape falls within the purview of § 53-158, "Escape while at work," and not § 53-155, "Escape from correctional institution"; and that his plea of guilty was constitutionally invalid because it was not entered intelligently and with an understanding of the alternative courses of action open to him.

The defendants make the claim that § 53-158 applies only to an inmate of a community correctional center, formerly known as a jail, and not to an inmate of the Connecticut correctional institutions; that the plaintiff, at the time of his escape, was not outside the Connecticut correctional institution; and that § 53-155 is the statute which is legally applicable to the facts as they relate to the plaintiff's escape.

---

[3] "[General Statutes, revised to 1968] Sec. 53-158.   ESCAPE WHILE AT WORK.   Any person legally confined in any correctional institution except The Connecticut State Farm for Women who, while employed at labor without such institution, escapes or attempts to escape from the custody of any jail officer shall be imprisoned not more than three years."

On the basis of the briefs presented in this appeal and the arguments made before this court, the sole issue to be determined is which statute, § 53-155 or § 53-158, has proper application under the facts as found by the trial court. At the outset, this requires a summary of the legislative history of both statutes.[4]

Section 53-155 had its genesis in the Public Acts of 1878 when the General Assembly approved "An Act to punish the Escape of Convicts from State Prison." This statute provided, in part, as follows: "Every person legally confined in the state prison, who shall escape from said prison, or attempt to escape from said prison, shall be imprisoned in said prison not more than ten years." Section 1489 of the Revision of 1888 used almost identical language; the Revisions of 1902, § 1264; of 1918, § 6321; and of 1930, § 6173 (changing "Every person" to "Any person") followed the same language. The Revision of 1949, § 8492, stated, in part: "Any person legally confined in the State Prison, who shall escape or attempt to escape from said prison or from any subdivision thereof, or from any other institution to which he has been transferred from said prison, or from the custody of any person in whose charge he has been placed by the warden of said prison, shall be imprisoned in said prison not more than ten years." General Statutes, Revision of 1958, § 53-155, used that language except for a minor change. In 1961, under Public Act No. 312, § 4, the General Assembly repealed § 53-155 and substituted the fol-

---

[4] We point out that §§ 53-155 and 53-158 were repealed by Public Acts 1969, No. 828, § 214, which became effective October 1, 1971. See 1969 Sup. to the General Statutes, c. 942. These two statutes, however, were in effect at the time of the offense involved in the matter on appeal.

lowing language: "Any person legally confined in any penal or correctional institution who escapes or attempts to escape from such institution or from any other institution to which he has been transferred from such institution or from the custody of any person in whose charge he has been placed by the warden or superintendent of such institution shall be imprisoned not more than ten years." In 1965, under Public Act No. 556, § 3, the first portion of § 53-155 was amended to read as follows: "Any person legally confined in any penal or correctional institution, except The Connecticut Farm for Women, who escapes . . . ." Section 53-155 was not again amended until its repeal became effective October 1, 1971.

Section 53-158 had its origin in 1884 (Public Acts 1884, c. 55) when the General Assembly approved "An Act relating to Escapes from Jails and Workhouses." This provided as follows: "Every person confined in any county jail or workhouse who shall, while employed at labor without such jail or workhouse, escape or attempt to escape from the custody of any keeper, shall be fined and imprisoned for an amount or term not greater than the original sentence for which he was so confined at the time of his escape." Section 1492 of the Revision of 1888 contained almost identical language, as did the Revisions of 1902, § 1267, and of 1918, § 6324. The Revision of 1930, § 6176, contained the same language except for a change in the penalty provision. The Revision of 1949, § 8495, adopted a change brought on by § 1430i of the 1947 Supplement and read: "Any person legally confined in any county jail or workhouse who shall, while employed at labor without such jail or workhouse or on any county property, escape or attempt to escape from the custody

of any keeper shall be imprisoned for not more than three years." The Revision of 1958, § 53-158, basically followed the above language. In 1961, Public Act No. 312, § 7, repealed § 53-158 and the following language was substituted: "Any person legally confined in any penal or correctional institution who, while employed at labor without such institution, escapes or attempts to escape from the custody of any keeper shall be imprisoned not more than three years." Later in the 1961 session, the General Assembly, under Public Act No. 517, § 113, repealed § 53-158 and substituted the following, which read, in part: "Any person legally confined in any county jail or workhouse who, while employed at labor without such jail or workhouse or on any state property, escapes . . . ." Still later in the same session, the General Assembly adopted Public Act No. 580, § 15, which again repealed § 53-158 and substituted the following: "Any person legally confined in any jail who, while employed at labor without such jail, escapes or attempts to escape from the custody of any jail officer shall be imprisoned for not more than three years." In 1965, by Public Act No. 556, § 5, § 53-158 was again repealed and there was substituted the following, stating, in part: "Any person legally confined in any penal or correctional institution except The Connecticut State Farm for Women who, while employed at labor without such institution, escapes or attempts to escape from the custody of any jail officer . . . ." The 1967 session of the General Assembly adopted Public Act No. 152, which states in § 9: "The definition of 'penal institutions' in section 1-1 of the general statutes is repealed. Wherever the term 'penal institutions' appears in the general statutes, it shall be construed to mean correctional institutions, as

defined in section 10 of this act." Section 10 states, in part: " 'Correctional institutions' means the State Prison, the State Prison for Women, the jails, the Connecticut Reformatory and The Connecticut State Farm for Women."[5] Finally, in 1969 the General Assembly by Public Act No. 297 repealed the prior definition of "correctional institutions" and substituted in § 1-1 the following pertinent language: " 'Correctional institutions' means the Connecticut Correctional Institution, Somers; the Connecticut Correctional Institution, Osborn; the Connecticut Correctional Institution, Niantic; the Connecticut Correctional Institution, Cheshire; and the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and New London. Wherever in the general statutes, the words 'State Prison,' appear, they shall be construed to mean the Connecticut Correctional Institution, Somers; 'State Prison for Women' shall be construed to mean the maximum security division of the Connecticut Correctional Institution, Niantic; 'jails' or 'jail' shall be construed to mean the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and New London or any of them, as the case may be." This definition was in effect at the time of the plaintiff's escape.

The plaintiff contends that he made his escape from outside the Connecticut correctional institution in Enfield in an area devoid of security and that the escape was not from within its walls or gates and occurred without any form of security to pre-

[5] In 1961, by Public Act No. 130, the General Assembly amended § 1-1 of the General Statutes by adding the following definitions: " 'Penal institutions' means the State Prison, the State Prison for Women, and the jails. 'Correctional institutions' means the Connecticut Reformatory and The Connecticut State Farm for Women."

vent the escape of prisoners working there and under circumstances which placed that escape more properly within the purview of § 53-158 rather than § 53-155. With this view we cannot agree.

The legislative history of § 53-158 reviewed above demonstrates that it was intended to apply to inmates of jails and workhouses, now known as community correctional centers, and not to inmates of the Connecticut correctional institution at Enfield.

The pertinent language of § 1-1 makes the distinction clear by including the Connecticut correctional institution, Osborn (now Enfield); see footnote 1, supra; in the category of facilities referred to as "correctional institutions," and construing "jails" or "jail" to mean "the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and New London."[6] By force of that distinction alone it is clear that the plaintiff was an inmate of a Connecticut correctional institution and subject to the penalties of § 53-155 rather than § 53-158. Where the words of a statute are unambiguous, "[i]t is the expressed intent of the legislature which controls, and that intent is to be found in the meaning of what it says." *Adams* v. *Vaill*, 158 Conn. 478, 483, 262 A.2d 169.

Further, since the plaintiff was not confined to a community correctional center (formerly known as a jail) his contention that § 53-158 applies to his case would have the effect of nullifying the words "jail officer" as they appear in that statute. Here we must be guided by the presumption that the General Assembly intended every statutory word

---

[6] The New London Community Correctional Center is now located in Montville.

and phrase to have meaning. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 192, 239 A.2d 534; *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525.

"When two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results." *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524; *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508. Had the General Assembly intended to have § 53-158 apply to an inmate of the correctional institution at Enfield, it would not have limited the statute to "escape from the custody of any *jail* officer." (Emphasis added.) Though it is true that both §§ 53-155 and 53-158 utilize the phrase "any correctional institution," the legislative history clearly indicates that as used in § 53-158 "correctional institution" refers to what was formerly known as a jail and is now known as a "Community Correctional Center."

As further support for the position we take, we point again to the court's finding which discloses that the plaintiff was confined to the Connecticut Correctional Institution at Enfield. General Statutes § 18-14a, entitled "Correctional institution, Enfield," provides as follows: "The Connecticut Correctional Institution, Enfield, shall be an institution distinct and separate from the Connecticut Correctional Institution, Somers. It shall be under the supervision of the commissioner of correction, who shall appoint a superintendent thereof. Inmates and employees of said institution shall be subject to the provisions of the general statutes applicable to the Correctional Institution, Somers, and the department of correction." Section 18-7, entitled "Powers and duties of warden. Punishment and

reward of inmates," provides, in part: "The warden shall manage the Connecticut Correctional Institution, Somers, subject to the direction of the commissioner of correction, and he shall keep all the prisoners employed in such labor as the commissioner orders . . . . The commissioner may employ prisoners outside the institution walls, within the state, under the charge of some officer of the institution." We construe these statutes to mean that under the charge of a corrections officer from the Connecticut Correctional Institution, Enfield, inmates may be employed outside the walls of that institution. This is precisely what was done in the present case. The plaintiff and other inmates, at all times in the custody of the corrections officer, were taken by truck from that institution to the warden's residence for the purpose of performing lawn maintenance work there, to which they were assigned. Having escaped from the work detail, the plaintiff escaped from the corrections officer in whose custody or charge he had been placed.

The plaintiff in his brief suggests that the new Penal Code sheds light on the correct interpretation of the statutory scheme created by §§ 53-155 and 53-158. We have reviewed the applicable sections of the new code and find nothing by way of legislative intent that affects our determination of the present case.

We conclude that the plaintiff's escape was in violation of § 53-155. Accordingly, the court was in error in concluding that the escape falls within the purview of § 53-158.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the writ.

In this opinion the other judges concurred.