ANTHONY MACIEJEWSKI *v.* TOWN OF
WEST HARTFORD ET AL.
(12146)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued April 3—decision released July 31, 1984

*Barbara J. Collins,* with whom, on the brief, were *J. William Gagne, Jr., Joseph A. Hourihan* and *Stephen Duffy,* for the appellant (plaintiff).

*Lisa B. Bingham,* for the appellees (named defendant et al.).

*Maurice T. FitzMaurice,* with whom, on the brief, was *Edmund A. Mikolowsky,* for the appellee (defendant pension board of the town of West Hartford).

ARTHUR H. HEALEY, J. The principal issue on this appeal is whether the defendants can lawfully deduct from the plaintiff's pension benefits, paid to him under the town of West Hartford's pension ordinance, those benefits which he receives under General Statutes § 7-433c which provides for disability benefits for heart disease and hypertension.

The facts are not disputed. The plaintiff was employed by the town of West Hartford (town) as a policeman until he suffered a myocardial infarction. At the time he was hired, the plaintiff had submitted to a physical examination which failed to reveal any evidence of

heart disease or hypertension. On December 13, 1977, the plaintiff applied to the town of West Hartford pension board (board) for pension benefits, and his application was approved. On May 23, 1978, a workers' compensation commissioner found the plaintiff to be entitled to benefits under General Statutes § 7-433c.[1] The board refused, relying on West Hartford Ordinances § 2-119 (a) (now § 30-24A), to authorize pay-

---

[1] General Statutes § 7-433c, which is entitled "Benefits for policemen or firemen disabled or dead as a result of hypertension or heart disease," provides in pertinent part: "In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment. . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under

ments under his pension which, cumulative with his benefits under § 7-433c, would exceed 75 percent of his average final compensation.[2]

The plaintiff then brought this action against the town, the board, and certain named individuals[3] seeking "a declaratory judgment as to whether or not the TOWN . . . can deduct payments made to him under [§ 7-433c] from pension payments made to him by the Defendants; and damages." The plaintiff and the defendants filed motions for summary judgment and the court found in favor of the defendants.

On this appeal, the plaintiff claims that the trial court erred in finding: (1) that the language of § 7-433c required his retirement benefits to be computed in the same manner as that used to compute retirement benefits of a person receiving workers' compensation; (2) that West Hartford Ordinances § 2-119 (a) authorizes the board to deduct the amount of the plaintiff's heart and hypertension benefits from the pension benefits due him; and (3) that General Statutes § 7-433b had no application to his pension payments. We find no error.

In concluding that the West Hartford pension board properly refused to authorize pension payments to the plaintiff which, cumulative with his heart and hypertension benefits under General Statutes § 7-433c, would exceed 75 percent of his average final compensation,

which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability."

[2] West Hartford Ordinances § 2-119 (a) (now § 30-24A) provides: "No allowance paid to any member under this plan, including social security and workmen's compensation payments, if any, shall exceed seventy-five (75) percent of his average final compensation."

[3] The plaintiff, in his second amended complaint, also named William N. Brady, West Hartford town manager and chief administrator, and Richard A. Russo, West Hartford director of finance, as defendants.

the trial court, citing *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 673, 425 A.2d 131 (1979), stated that "the compensation required by § 7-433c is not required by the 'workmen's compensation law.' " It further stated, however, citing *Pyne* v. *New Haven,* 177 Conn. 456, 461, 418 A.2d 899 (1979), that the language of § 7-433c makes it clear "that retirement benefits are to be paid as if such compensation arose under the 'worker's [sic] compensation law.' "

The plaintiff maintains that the award of heart and hypertension benefits under General Statutes § 7-433c does not fall within the language of § 2-119 (a) which provides that "[n]o allowance paid to any member under this plan, including social security and workmen's compensation payments, if any, shall exceed seventy-five (75) percent of his average final compensation." In support of this claim, the plaintiff argues, relying on *Plainville* v. *Travelers Indemnity Co.,* supra, that heart and hypertension benefits under § 7-433c are not "workmen's compensation benefits" and, therefore, cannot be considered to fall within the provisions of § 2-119 (a). Rather, the plaintiff asserts that § 7-433c "is only determinative as to the amount of benefits a person may receive for hypertension or heart disease and is not relevant to issues of pension setoff." He claims that the legislative history of § 7-433c makes it clear that the legislature did not intend that § 7-433c should be used in combination with municipal pension provisions to decide issues of pension setoff. Further, he claims that a careful reading of *Pyne* indicates that it "is not conclusive as to pension setoffs" but that "it merely held that all benefits given under a municipal retirement system to persons injured in the line of duty must also be extended to hypertension and heart disease victims."

Thus, on the basis of his analysis of heart and hypertension benefits, the plaintiff asserts that the remaining question is whether such benefits "can be deducted

under the terms of the plan by implication." Here, the plaintiff argues that while it may be asserted that the language "including social security and workmen's compensation payments" contained in § 2-119 (a) implies that the "deductions mentioned are not an exhaustive list" because the word "including" is ordinarily a word of enlargement rather than limitation, such an interpretation would be contrary to the rule that pension plans are to be construed liberally in favor of the pensioner. We find these arguments unpersuasive.

In making the above claims, the plaintiff misconstrues the relevant legislative history of § 7-433c which we explicated in *Pyne* v. *New Haven,* supra, 460–61. In *Pyne,* we pointed out that "[t]he legislature enacted General Statutes § 7-433c for the purpose of placing policemen who die or are disabled as a result of hypertension or heart disease *in the same position vis-a-vis compensation benefits as policemen who die or are disabled as a result of service related injuries.* The legislative rationale, set forth in the preamble to § 7-433c, was to recognize the many problems and unusual risks attendant upon the occupation, including the high degree of susceptibility to heart disease and hypertension, and to provide protection against economic loss as an inducement in attracting and securing persons for such employment, and in recognition that the public interest and welfare will be promoted by providing such protection for police department members. . . . In the case of those policemen and firemen covered by its provisions, *§ 7-433c was designed to impact not only on workmen's compensation benefits but upon retirement and survivor's benefits as well.*" (Emphasis added.) We adhered to this basic interpretation of the legislative purpose behind § 7-433c in *Plainville* v. *Travelers Indemnity Co.,* supra, 670.

This view is entirely consistent with the legislative history upon which the plaintiff relies. The plaintiff has pointed to certain portions of the house proceedings which took place in 1977 in regard to proposed legislation which provided for a deduction of pension benefits from heart and hypertension benefits. 20 H. R. Proc., Pt. 14, 1977 Sess., pp. 6048–50; 20 H. R. Proc., Pt. 5, 1977 Sess., pp. 1815–18. The plaintiff claims that the legislature rejected this proposed legislation and, therefore, the legislature specifically chose to eliminate the issue of pension setoff and deduction. The plaintiff's interpretation of this legislative history is wide of the mark. The floor debates referred only to a proposal which would have provided for a deduction of pension benefits *from* heart and hypertension benefits and *not,* as in this case, a deduction of heart and hypertension benefits from pension benefits. This proposal was rejected. There is no reference in those debates to any limitation on the power of a municipality to take into account heart and hypertension benefits when calculating the maximum amount of pension benefits due to a member of that municipality's pension plan.

Moreover, we point out that while the legislature did not adopt the proposed "deduction" provision, it did adopt Public Acts 1977, No. 77-520 which amended § 7-433c to provide, inter alia, that "[t]he benefits provided by this section *shall be in lieu of* any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 [the Workers' Compensation Act] . . . as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability." (Emphasis added.) Words used to express legislative intent are to be given their commonly approved meaning unless a contrary intent is clearly expressed. General Statutes § 1-1;

*Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1957). "In lieu of" ordinarily means "[i]nstead of; in place of; in substitution of." Black's Law Dictionary (5th Ed.); *Glassman Construction Co.* v. *Baltimore Brick Co.,* 246 Md. 478, 481, 228 A.2d 472 (1967). As we stated in *Pyne* v. *New Haven,* supra, 460–61, an examination of the legislative history of § 7-433c demonstrates that it was intended to place those policemen who die or are disabled as a result of heart disease or hypertension "in the same position vis-a-vis compensation benefits" as policemen who die or are disabled as a result of service related injuries. Clearly then, West Hartford may, under § 2-119 (a) of its pension plan, treat benefits under § 7-433c in the same manner as workers' compensation payments.[4]

---

[4] We also point out here that the plaintiff has made a related claim relying upon General Statutes § 7-433b. Specifically, he points to § 7-433b (b) which provides: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system, the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total of such cumulative payments shall not exceed said one hundred per cent of the weekly compensation."

Here, the plaintiff claims that reading § 7-433b (b) together with § 7-433c does not require that pension benefits of those who are entitled to heart and hypertension benefits must be exactly the same pension benefits as those of a person collecting workers' compensation benefits. In essence, he claims that an adjustment may be made to the combined total of his benefits under § 7-433c and his pension benefits *only* when together they exceed 100 percent of his weekly compensation.

From what we have already said concerning our interpretation of the legislative purpose behind § 7-433c, we must reject the plaintiff's claim relating to § 7-433b. "It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate

With this view of the legislative purpose behind the statutes controlling heart and hypertension benefits, we now turn to the issue of whether, under § 2-119 (a) of the West Hartford pension plan, the plaintiff's heart and hypertension benefits are to be taken into account in determining his maximum allowance under that pension plan.

We first point out with regard to the language of § 2-119 (a) that there is some ambiguity concerning whether the word "including," as it refers to "social security and workmen's compensation payments," was intended as a word of limitation as claimed by the plaintiff or one of enlargement as claimed by the defendants. We have recognized in the past that the words "include" and "including" can be considered as words of limitation as well as enlargement. *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 150, 285 A.2d 352 (1971). In *Hartford Electric Light Co.,* we indicated the most likely common use of the term "shall include" is one of limitation, although we also pointed out that we could not, in the context in which it was used, conclude with certainty that it was so employed. Id. Assuming, arguendo, for the purposes of this case that the word "including" in § 2-119 (a) is to be construed as one of limitation as claimed by the plaintiff, we now turn to the issue of whether the plaintiff's heart and

---

parts in order to render a reasonable overall interpretation. . . . We must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain." *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979). Not only does the plaintiff's interpretation of § 7-433b run contrary to the express legislative purpose of § 7-433c, but it also ignores the plain language of § 7-433b itself which clearly refers, as its title states, to the "[m]aximum cumulative payment" available to a recipient. Indeed, in *Pyne* v. *New Haven,* 177 Conn. 456, 462–64, 418 A.2d 899 (1979), we expressly referred to § 7-433b as a "statutory ceiling." There is therefore no merit to the plaintiff's claim that § 7-433b precludes the reduction of his pension pursuant to the terms of § 2-119 (a) of the West Hartford pension plan.

hypertension benefits are to be considered "workmen's compensation payments" which the defendants could properly take into account under § 2-119 (a) in determining his maximum allowance under the West Hartford pension plan.

Initially, it is again of prime importance that we refer to our holdings in *Pyne* v. *New Haven,* supra, and in *Plainville* v. *Travelers Indemnity Co.,* supra. In *Pyne,* the plaintiff, who was the widow of a New Haven police officer who had died as a result of a heart attack, was found to be entitled to and therefore received benefits under General Statutes § 7-433c. *Pyne* v. *New Haven,* supra, 456, 462. She then claimed to be entitled to receive benefits under § 258A of the New Haven charter which provided that "the widow of a police department member who is 'killed while in the actual performance of duty or shall die from the proximate effects of any injuries received while in the actual discharge of such duty' is entitled to 'a weekly compensation equal to the difference between the maximum weekly compensation to which a widow of any deceased member is entitled and received under the provisions of the general statutes relating to workmen's compensation, and the weekly earnings of her deceased husband at the time of his death.' " Id., 457–58. The defendant argued, inter alia, that the plaintiff was not entitled to benefits under § 258A "because the plaintiff [was] not receiving workmen's compensation benefits." Id., 461. After discussing the legislative purpose behind § 7-433c, which we have already referred to above, we found this argument of the defendant to be of "little merit" and stated that "[t]he short answer to the city's argument is that . . . § 7-433c entitles the plaintiff to receive workmen's compensation benefits; *Grover* v. *Manchester,* 165 Conn. 615, 617–18, 353 A.2d 719 (1973); and that is indeed what she has been receiving and continues to receive."

*Pyne* v. *New Haven,* supra, 461–62. Thus, the plaintiff was found to be entitled to benefits under § 258A of the New Haven charter.

In *Plainville* v. *Travelers Indemnity Co.,* supra, the plaintiff town was faced with a claim of benefits under § 7-433c by the widow of one of its police officers. The plaintiff conceded the validity of this claim and notified the defendant insurer that it considered the claim to be within the purview of the " 'Workmen's Compensation and Employer's Liability Policy' " issued to the plaintiff by the defendant. The defendant denied the plaintiff's claim under that policy because it claimed that the policy did not provide coverage for claims made under § 7-433c. Id., 665–66.

On a reservation by the trial court we were asked to decide whether the policy issued by the defendant to the plaintiff provided coverage for the benefits to which the claimant widow was entitled under § 7-433c by virtue of the death of her husband. Id., 666. In concluding that the defendant was not liable under the policy, we pointed out that the plaintiff's liability for benefits to the claimant "arose solely under § 7-433c and not under the provisions of the workmen's compensation act. . . ." Id., 672. Although we held in *Plainville* that § 7-433c is neither a " 'workmen's compensation law' nor 'occupational disease law' " of this state, our holding was a narrow one, as it was limited to whether the parties intended that the defendant would be liable for § 7-433c benefits under the insurance policy with the town. Id., 674–75.[5] We deemed it important in *Plainville* that basic rules of contract construction required a determination of what the contracting parties intended as evidenced by the clear and

---

[5] The pertinent provisions of the policy between the plaintiff and the defendant in *Plainville* provided that the insurer was " 'to pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law,' and define[d] the term 'workmen's com-

unambiguous language used in their contract. Importantly, we pointed out that § 7-433c benefits are not causally connected to a claimant's employment and we concluded that "[t]he fact that a policy of insurance against liability under [the workers' compensation act] must cover the entire liability of the employer thereunder . . . has no application to employer liability imposed by special bonus legislation unrelated to traditional workmen's compensation concepts." Id., 674. Thus, we could not conclude under the express terms of the contract that the defendant in *Plainville* would be liable for payment of benefits arising under § 7-433c. Id., 672–75. Referring to our holding in *Pyne*, rendered less than four months earlier, we further expressed the narrow scope of our holding in *Plainville* by stating that "[w]ithin the context and the facts of this case we cannot approve of *Pyne* v. *New Haven*, [supra], to the extent that a contrary view is expressed therein." *Plainville* v. *Travelers Indemnity Co.*, supra, 672.

With this discussion of our holding in *Pyne* and our narrow holding in *Plainville* in mind, we conclude that § 7-433c benefits are "workmen's compensation payments" under § 2-119 (a) of the West Hartford pension plan. It is quite clear that the circumstances present and issues raised in this case are substantially analogous to those in *Pyne* and not to those in *Plainville*. Further, while we do not reject the principle that pension plans should be liberally construed in favor of the pensioner; see, e.g., *Newman* v. *City of Oakland Retirement Board*, 80 Cal. App. 3d 450, 145 Cal. Rptr. 628 (1978); *Board of Trustees of the Policemen's Pension Fund of Atlanta* v. *Christy*, 246 Ga. 553, 272 S.E.2d 288 (1980); any other interpretation of § 2-119 (a) would

---

pensation law' as 'the workmen's compensation law and any occupational disease law' of the state of Connecticut *'but does not include those provisions of any such law which provide non-occupational disability benefits.'* " (Emphasis added.) *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 666, 425 A.2d 131 (1979).

lead to an absurd result. If we were to accept the plaintiff's position and conclude that § 7-433c benefits are not to be considered "workmen's compensation payments" under § 2-119 (a), the plaintiff would not be placed in the *same* position vis-a-vis his pension benefits as other West Hartford policemen who die or who are disabled as a direct result of service-related injuries; rather, he would be placed in a *superior* position since his § 7-433c benefits, which are not causally connected to his employment, could not then be taken into account in determining his maximum pension allowance under § 2-119 (a).

As our Appellate Court aptly observed in its well reasoned decision in *Middletown* v. *Local 1073,* 1 Conn. App. 58, 64, 467 A.2d 1258 (1983), cert. denied, 192 Conn. 803, 471 A.2d 244 (1984), which presented a nearly identical issue as that presented in this case, "[c]ourts are particularly sensitive to claims which would give rise to solutions providing the plaintiff either with greater benefits for disability or death than if the worker had lived and worked or with greater benefits than other workers similarly situated. *City of Costa Mesa* v. *McKenzie,* 30 Cal. App. 3d 763, 775, 106 Cal. Rptr. 569 (1973)." The anomalous result which would be obtained if we were to accept the plaintiff's position was clearly not intended by the legislature and we cannot attribute a different intention to the town of West Hartford.

A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. *Duplin* v. *Shiels, Inc.,* 165 Conn. 396, 398–99, 334 A.2d 896 (1973); see *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981). The law favors rational and sensible statutory construction. 2A Sutherland, Statutory Construction (4th Ed.) § 45.12. The unreasonableness of the result obtained by the accept-

ance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. *Commissioner of Internal Revenue* v. *Brown,* 380 U.S. 563, 571, 85 S. Ct. 1162, 14 L. Ed. 2d 75 (1965); *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 609, 266 A.2d 382 (1969); see *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980). "When two constructions are possible, courts will adopt the one which makes the [ordinance] effective and workable, and not one which leads to difficult and possibly bizarre results." *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958); see *Milano* v. *Warden,* 166 Conn. 178, 187, 348 A.2d 590 (1974). We must presume that a reasonable and rational result was intended by the town of West Hartford in enacting § 2-119 (a). *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975); see *State* v. *Campbell,* supra, 564; *Middletown* v. *Local 1073,* supra, 62–63.

We therefore conclude that the defendants acted properly in taking the plaintiff's § 7-433c benefits into account in determining the maximum amount payable to him under § 2-119 (a) of the West Hartford pension plan.

There is no error.

In this opinion the other judges concurred.