[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These three cases are administrative appeals from sewer use charges pursuant to section 7-255 of the General Statutes which challenge whether the City of Milford has properly assessed sewer use charges under the statute and a city ordinance. Identical claims are made in the three appeals so they were tried and will be decided together. The parties filed a stipulation of facts with attached exhibits, and by agreement of the parties the Court heard evidence necessary to decide the legal issues involved in the appeals. CT Page 1243
The appeals were initially for the sewer use charges to the plaintiffs for the 1989-1990 fiscal year, but they were subsequently amended to challenge the sewer use charges for the 1990-1991 fiscal year when those rates were established for the properties owned by the plaintiffs.
The plaintiff Robert Treat Associates Limited Partnership [hereafter called "Treat"] is the owner of property on Robert Treat Drive in Milford which is improved with an apartment building complex containing 124 separate apartments or dwelling units. The plaintiff Newport Associates [hereafter called "Newport"] is the owner of property which is also located on Robert Treat Drive, and which is improved with an apartment building complex containing 160 separate apartments or dwelling units. The plaintiff Milford Beach Associates [hereafter called "Milford Beach"] is the owner of property on East Broadway in Milford improved with an apartment building complex containing 244 separate apartments or dwelling units. The defendant, Board of Sewer Commissioners of the City of Milford [hereafter called "the defendant" or "the Board"] is the water pollution control authority of the City of Milford, and exercises the powers and duties given to water pollution control authorities under chapter 103 of the Connecticut General Statutes. On April 7, 1986 the Milford Board of Aldermen, the City's legislative body, passed a sewer ordinance which amended chapter 23 of the Milford Code to add sections 23-80
through 23-86, inclusive, which governs the method for computing sewer use charges. The ordinance requires the defendant Board to annually review and establish sewer use charges and to generate adequate revenues to pay the cost of operation, maintenance and equipment replacement of the municipal sanitary sewer system of the City of Milford. There are about 16,000 connections to the sewer system, of which about 12,000 are residential connections. The Board's procedure was to establish, after considering expenses, a rate for each fiscal year to be charged per billing unit to each user of the sewer system. The rate for the 1989-1990 fiscal year was $122.40 per billing unit, and the rate for the 1990-1990 fiscal year was $143.52 per billing unit. There are approximately 21,000 billing units for the sewer system, and most customers are charged at the rate of one billing unit. The amount to be raised for the 1990-1991 fiscal year is 2,862,451 out of a total budget of 3,058,451.
The plaintiffs do not challenge the amount of the sewer budget of the Board but rather the allocation of charges to their respective properties. It is also undisputed that all of the separate apartment or dwelling units on the three properties are connected with the Milford municipal sewer CT Page 1244 system. Each of the plaintiffs was charged one billing unit for each of their apartments so that Treat was assessed for 124 units, Newport for 160 units and Milford Beach for 244 units. At the rates of $122.40 and $143.52 for the two fiscal years, Treat was charged $15,177.60 and $17,796.48 for the two fiscal years. The charges for Newport at the same rate for its 160 units was $19,584.00 and $22,963.20. Milford Beach was assessed for its 244 units at $29,865.60 and $35,018.88.
Each sewer user is charged a number of units which is always expressed as a whole number. The great majority of users of the sewer system are billed at the rate of one modified equivalent unit, which is the minimum unit charge for all users of the sewerage system. The Board's policy in establishing the sewer use charge was stated in the legal notices of the charges. One modified equivalent unit [as defined in section 23-81(q)] is the charge applicable to single family residences, apartments, condominium units and to individual stores and storage facilities, and offices up to 3,000 square feet as well as the minimum charged for connection for all other classes of users. Larger users were charged for the total number of modified equivalent units used, rounded up to the nearest whole number. The legal notices stated the number of modified equivalent units used for all sewer users who were billed for five or more billing units, which included the plaintiffs' properties. The plaintiffs claim that they were overcharged, and that their rate should have been based upon actual water usage by their respective properties.
Section 7-255 of the General Statutes provides in part that "any person aggrieved by any charge. . .for the use of a sewerage system may appeal to the superior court", and that the judgment of the court shall be final. In order to have standing to bring an administrative appeal, the appellant must be aggrieved. Connecticut Business Industries Ass'n., Inc. v. Commission on Hospitals and Health Care, 214 Conn. 726,729; Beckish v. Manafort, 175 Conn. 415, 419; Downey v. Retirement Board, 22 Conn. App. 172, 176. There is a two part test for aggrievement: (1) the party claiming aggrievement must show a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole; and (2) the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Connecticut Business Industries Ass'n., Inc. v. Commission on Hospitals and Health Care, supra, 730; Bakelaar v. West Haven, 193 Conn. 59, CT Page 1245 65. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected. Hall v. Planning Commission, 181 Conn. 442, 445. While a large number of property owners in Milford have to pay sewer use charges, only a relatively small number of them are charged at over one unit. Very few property owners were charged with the high number of units billed to the plaintiffs, namely 124, 160 and 244 billing units. The Board has billed the plaintiffs one unit for each of their apartments, resulting in significant sewer use charges each year, even though some of the apartments are vacant and make virtually no actual use of the sewerage system, at least on a temporary basis. There is also a claim that the water usage is less than at least some other users who are also billed at one unit. Aggrievement is established in all three appeals.
The plaintiffs make two challenges to the method of assessment of sewer use charges by the Board: (1) the method of assessment is not authorized by section 7-255 and the Milford sewer ordinance; and (2) the assessment method improperly charges a property owner for more services than are being received. The plaintiffs claim that the charge of billing each apartment or dwelling unit as one billing unit is unfair and that the billing units have been determined without regard to water usage data or actual use of the sewer.
The relevant part of section 7-255(a) of the General Statutes reads as follows:
 "The water pollution control authority may establish and revise fair and reasonable charges for connection with and for the use of a sewerage system. The owner of property against which any such connection or use charge is levied shall be liable for the payment thereof. . . . In establishing or revising such charges the water pollution control authority may classify the property connected or to be connected with the sewer system and the users of such system, including categories of such industrial users, and may give consideration to any factors relating to the kind, quality or extent of use of any such property or classification of property or users including, but not limited to, (1) the volume of water discharged to the sewerage system, (2) the type or size of building connected with the sewerage system, (3) the number of plumbing fixtures connected with the sewerage system, (4) the number of persons CT Page 1246 customarily using the property served by the sewerage system, (5) in the case of commercial or industrial property, the average number of employees and guests using the property and (6) the quality and character of the material discharged into the sewerage system. The water pollution control authority may establish minimum charges for connection with and for the use of a sewerage system."
The statute allows the municipality to establish categories of users and sets forth factors which may be considered in deciding sewer use charges, although the municipality is not limited to those factors. Most important to the issues here, section 7-255 expressly allows the Board to establish minimum charges for the use of a sewerage system. This severely undercuts any argument that billing for sewer use charges must be based exclusively on actual usage of the sewer.
Section 23-81 of the Milford Code, subsections (e) through (i) establishes several categories of users: residential, commercial, industrial, institutional and governmental. Section 7-255(b) C.G.S. allows any municipality by ordinance to provide for the payment of all or part of the sewer use charges for specified classifications of property or users, provided such classifications meet certain requirements of federal law. Section 23-80(b) of the sewer ordinance provides in part "for the proportional distribution of operation and maintenance including replacement costs among users and user classes." The ordinance does allow the Board to take into account in setting sewer use charges actual water usage [sections 23-83(b) and 23-85], whether wastewater has a greater strength than normal domestic sewage [section 23-83(c)], and whether any user discharges toxic pollutants or any substance which causes increases in the cost of operating and maintaining the treatment works [section 23-83(d)]. These considerations are directly related to subsections (1), (6) of section 7-255(a) C.G.S., namely the volume of water discharged to the sewerage system, and the quality and character of the material discharged into the system. The statute provides considerable flexibility for the content of a municipal ordinance. The Milford sewer ordinance adequately complies with the statutory guidelines.
The plaintiffs' next, related challenge is that the Milford ordinance violates the principles governing sewer assessments by charging a user for more services than that person is using. The plaintiffs rely upon Pepin v. Danbury, CT Page 1247171 Conn. 74, 86, and claim that a taxpayer cannot be charged for more services than he is actually receiving. That is not an accurate statement of the law. The payment of taxes is never in direct proportion to services actually received by a municipal taxpayer. For example, not all taxpayers have children in the municipal school systems. Also, all hope they will not need the services of the fire department. In Pepin v. Danbury, supra, the city taxed properties using the sewer system at a rate three times higher than the average annual cost of maintaining the system, and properties connected to the water system and sewer system received a 7 1/2 percent surcharge for each of those services. These additional assessments were set aside as not authorized by an enabling statute for special tax districts, section 7-198 C.G.S. "because under that statute, a taxpayer cannot be charged for more than he is actually receiving." Id., 86.
The situation here is different in that the total amount of sewer use charges approximates the amount of money to run the sewer system, there is one basic rate for everyone, and it is assessed only against sewer users. To the extent that different categories of users are charged at different rates, this is allowed by the enabling statute, section 7-255. While the volume of water discharged into the sewer system is a factor which can be considered in setting the rates, it is not the only factor. The ordinance is not illegal and unenforceable merely because it allows the Board to charge property owners the same rate, namely one billing unit, even though they discharge different volumes of water into the sewerage system. As previously stated, the municipal ordinance may set different rates for different categories of users, consider the quality and character of the material discharged into the sewerage system and establish minimum charges for its use. This necessarily means in some cases that users discharging different volumes of water into the sewer will be billed at the same minimum rate. This in fact happens with the majority of property owners paying the user charge. A municipal ordinance is presumed to be valid unless its invalidity is established beyond a reasonable doubt. Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 23. The plaintiffs have not proven that the ordinance is illegal or unconstitutional.
The next claim is that even if the ordinance is valid the Board improperly applied it in determining sewer use charges. Public officials such as members of an administrative agency are presumed to have done their duty until the contrary appears. Leib v. Board of Examiners for Nursing, 177 Conn. 78, 84; Murach v. Planning and Zoning CT Page 1248 Commission, 196 Conn. 192, 205. Section 23-80(b) provides in general for "proportional distribution of operation and maintenance including replacement costs among users and user classes." Several classes of users are defined in section23-81. Section 23-80(a) provides in part that the City should "collect charges from all users who contribute wastewater to the wastewater treatment works" and that the proceeds of those charges are for operating and maintaining it. Section 23-12 defines "user" as "any person who contributes, causes or permits the contribution of sewage into the city's sewer system." Section 23-83(e) states that "the user charge rates established in this division apple to all users of the city's treatment works." Section 23-83(a) provides that "each user shall pay for the services provided by the city based on his use of the treatment works as determined by its equivalent units." "Equivalent units" are defined in section 23-81(p) as "the annual water consumption in units of one hundred (100) cubic feet divided by thirteen thousand three hundred (13,300) cubic feet rounded up to the nearest whole number."
There is a dispute between the parties as to the effect of section 23-83(b) which reads as follows:
 "For residential, industrial, institutional and commercial users, user charges will be based on actual water usage. If a residential, commercial, institutional or industrial user has a consumptive use of water or, in some other manner, uses water which is not discharged into the wastewater collection system, the user charge for that contributor shall be based on modified equivalent units."
Section 23-81(q) provides that "`modified equivalent units' shall be used when equivalent units are not applicable and shall be defined as discharge to municipal sewer in gallons per day divided by two hundred and thirty-two (232) gallons per day, rounded up to the nearest whole number." The plaintiffs claim that the ordinance read as a whole requires that the user charges be determined for most users of the sewer on the basis of actual water usage data. The plaintiffs' argument zeroes in on that part of section 23-83(b) that provides that for residential, industrial, institutional and commercial users, user charges will be based on actual water usage. The Board, looking to other language in the ordinance claims that it has been correctly setting user charges based on modified equivalent units. Under its interpretation of the ordinance it has been setting charges in all cases based upon modified equivalent units CT Page 1249 rather than equivalent units. The basis for this is that using equivalent units requires, by the definition in section23-81(p), determination of annual water consumption and that it does not have data to make this determination. It also claims that if users of the sewer, including residential users, use water which does not go into the sewer system then, under the second sentence in section 23-83(b) the user charge for that contributor must be based on modified equivalent units. The defendant makes the related claim that virtually all properties use some water which does not go into the sewer system and that it does not have any data as to the volume of water discharged into the sewer system which is more important in proportioning costs among users of the sewer system than water coming onto the property of sewer users.
The Board also argues the practical problems of applying the ordinance as suggested by the plaintiffs. Not all properties have water meters, and one meter may serve more than one billing unit making it difficult to set water use for each unit needed for sewer use charges. The City would also face significant administrative problems with tying the sewer use charges into measurement of actual water use, and while water meters may measure the volume of water coming into a building, there are no meters to measure water discharge into the sewer. The net effect of all this is that virtually all properties are billed based on "modified equivalent units".
A local ordinance is a municipal legislative enactment and the same canons of construction as are applied to state statutes are applicable to ordinances. Maciejewski v. West Hartford, 194 Conn. 139, 151; Aaron v. Conservation Commission, 183 Conn. 532, 537. Since the law favors a rational and sensible construction, it must be presumed that a reasonable and rational result was intended by the City of Milford in passing the sewer ordinance. Maciejewski v. West Hartford, supra, 151, 152. Where a municipal agency, charged with application of the ordinance, has previously interpreted it, the practical construction placed upon it in the past is entitled to some consideration. Clark v. Town Council,145 Conn. 476, 485; Fedorich v. Zoning Board of Appeals,178 Conn. 610, 616; New Haven v. United Illuminating Co.,168 Conn. 478, 493. It must also be kept in mind that "courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." Brazo v. Real Estate Commission, 177 Conn. 515, 519; Silver Lake Pickle Co. v. Zoning Board of Appeals, 143 Conn. 316, 319. CT Page 1250
The issue here is not strictly which version of interpretation of the sewer ordinance is correct, but rather whether the Board could reasonably determine that charges should be based on "modified equivalent units" rather than "equivalent units". Section 23-81(q) provides that: "modified equivalent units" shall be used when equivalent units are not applicable. The Board determined that the intent of subsections (a) and (b) of section 23-83 was to set sewer user charges based upon actual amounts of wastewater discharged into the sewer system. There may be water discharged into the sewer which did not go through a water meter or water line. [See section 23-81(t)]. This interpretation, rather than determining the charges based upon the amount of water entering each property, (even assuming such data was available), more closely coincides with the standard in subsection (1) of section 7-255(a) of the General Statutes, namely the volume of water discharged into the sewerage system. It could also reasonably conclude that "actual water usage" in subsection (b) means water discharged into the sewerage system. When that use is established the user charge is based upon equivalent units. Since the Board has no data on actual volume of water discharged into the sewerage system by each user, it could reasonably conclude that charges could not be based on "equivalent units" and that "modified equivalent units" should be used since equivalent units are not applicable. Section 23-81(q).
The plaintiffs are requesting the court to second-guess the Board on a judgment call that it was not appropriate to use equivalent units because it did not have a practical way to determine the volume of discharge of each sewer user and that data, in the form of water records of water supplied by the regional water company, was not adequate for that purpose. The Board's decision to use "modified equivalent units" is supported by the fact that the difference in volume of water between one equivalent unit and one modified equivalent unit is minimal. There was testimony from an engineer who is one of the sewer commissioners, that the volume of water in the definition of "equivalent unit" in section 23-81(p) amounts to 272 gallons per day, as contrasted with the reference of 232 gallons per day in the definition of "modified equivalent unit" in section 23-81(q). This difference of 40 gallons per day amounts to about a 15 percent differential. The Board's decision to use modified equivalent units for all properties rather than the equivalent units, even if that was required by the ordinance, does not result in unequal treatment between sewer users, which is the basis for the plaintiffs' appeals. This is true for two reasons. First of all, if the volume of water CT Page 1251 entering the property and leaving it through the sewer is essentially the same, as claimed by the plaintiffs, then there is no material difference between assessing everyone based on equivalent units or assessing everyone based on modified equivalent units. Secondly, applying the definitions of each term, the number of units is rounded up to the nearest whole number. This means that if a property uses less than 232 gallons per day, the number of units is rounded up to one modified equivalent unit or one equivalent unit, but in each case the resulting number is 1. There is evidence that about 9,600 out of 12,000 residential units use less than the minimum amount of water, and are billed at one unit.
The plaintiffs have not shown that any properties are charged two billing units instead of one because the Board used modified equivalent units rather than equivalent units for that property. Even if such cases theoretically exist, the plaintiffs' properties are not affected since all of their apartments use less than 232 gallons per day. Their standing to challenge application of the ordinance must be based on their own rights, not someone else's.
There is no showing that the charges to the plaintiffs would be any different if the Board had used equivalent units. If there is any difference in the annual rate per billing unit from adjusting the number of units for a few properties in the City it would at most be pennies. As far as the plaintiffs' properties are concerned this is grounds to apply the principal of "de minimis non curat lex" (the law does not concern itself with mere trifles). People's Savings Bank v. Borough of Norwalk, 56 Conn. 547, 558. The Board's application of the ordinance is practical and results in the same basic rate for everyone. See Windham First Taxing District v. Windham, 208 Conn. 543, 553. As Justice Brandeis stated in Truax v. Corrigan, 257 U.S. 312, 357 (1921) "government is not an exact science."
The Board's obligation under the ordinance was to make proportional distribution of the costs of operating the sewer system among its users, but allowing for a minimum charge for each user of the system. Section 23-80, Milford Code; section 7-255 C.G.S. The Board's obligation is to set fair and reasonable charges. See Pepin v. Danbury, supra, 85.
The Board could reasonably conclude that each of the plaintiffs' apartments was a separate residential user under section 23-81(e) of the ordinance, and that each apartment was one billing unit. There is a rebuttable presumption that the assessment was valid. Bridge Street Associates v. Water CT Page 1252 Pollution Control Authority, 15 Conn. App. 140, 144. The factual and discretionary determinations of an administrative agency are to be given considerable weight by the courts. Lieberman v. Board of Labor Relations, 216 Conn. 253, 262; Westport v. Norwalk, 167 Conn. 151, 161. While the ordinance is ambiguous, confusing, contains unessential definitions, omits others, and could have been written better (and probably should be revised and clarified), the Board's interpretation of it was reasonable and pragmatic. Finally, while the plaintiffs' interpretation of the ordinance is rejected, there is no showing that their sewer use charges would have been any different if the Board followed their proposed interpretation of the ordinance.
The appeals are dismissed.
ROBERT A. FULLER, JUDGE