[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Lois Reynolds and Janice Crane, appeal a decision of the defendant Town of Granby Planning and Zoning Commission, which granted to the defendant, Ivory's Corporation, a special permit on September 22, 1992. This special permit allows the defendant, Ivory's Corporation, to operate a restaurant and commercial recreational use business and to sell alcoholic beverages at premises located at 10 Hartford Road in the Town of Granby. This appeal is brought pursuant to Conn. Gen. Stat. 8-8. The plaintiffs' appeal was brought on October 5, 1992 and subsequently the complaint was amended over objection of the defendants. The request to amend was granted on January 19, 1993 (Maloney, J.). Following the submission of written briefs, the case was assigned for oral argument on August 5, 1993.
At the hearing, Janice Crane of 15 East Granby Road, Granby, Conn., testified as to her residence and introduced a map and deed showing that she is an abutting property owner sufficient for the court to find aggrievement pursuant to 8-8
of the Conn. Gen. Stat.
Certain essential facts are undisputed. In August of 1992 "Ivory's, Corp.", made an application to the defendant Granby Planning and Zoning Commission (hereinafter known as the Commission) for the issuance of a special permit to develop a restaurant which could serve alcoholic beverages and to operate a billiard room. Each of those uses, i.e. to operate a restaurant, to sell alcoholic beverages, and to operate a billiard room (a commercial recreational use) require a special permit under 3.5 of the zoning regulations of the Town of Granby (hereinafter called "regulations"). The premises in which the restaurant is to be located consists of 8,000 square CT Page 7662 feet of vacant space within the confines of an existing shopping center located at No. 10 Hartford Road in Granby, Conn. The record supports a finding that the subject property is within a C-2 Zone in Granby center. The property was renovated in 1989 and 1990 following the approval by the Planning and Zoning Commission of a site plan submitted on February 21, 1989. The 8,000 square feet, which is the subject of this application, is within the former G H Building which has been vacant since 1986.
Approval of the application was supported by the Director of Community Development for the Town of Granby, the managing and leasing agent for the shopping center, the mortgagor of the shopping center, as well as various private individuals who either wrote letters, which are a part of the record, or testified at the public hearing.
The record of the public hearing held on September 8, 1992 further reflects that numerous concerned citizens raised issues of parking, alcohol and billiards being together, the appropriateness of having children under 18 on the premises, and also raised related and understandable concerns of the public.
Following the public hearing on September 22, 1992, the Commission voted to approve the issuing of a special permit for the property, subject to certain special conditions.
The court has carefully considered the many claims of the plaintiffs with respect to the granting of this special permit and determines that three of the claims are of sufficient merit to specifically address.[1]
 I.
In the First Count of the plaintiffs' appeal, the plaintiffs indicate that the permit violates a condition of the Commission's site plan approval dated February 21, 1989 for this site which limits the site to three restaurants. In support of the plaintiffs' position, they attach a copy of the minutes of the Commission dated February 21, 1989 which indeed indicates that the site plan approved on February 21, 1989 permitted a maximum of three separate restaurants for this location but clearly further provided that "any additional restaurant space must receive a special permit from the Commission." CT Page 7663
The Commission was fully aware of the site plan since the record reflects a letter to the Commission from Francis G. Armentano, Director of Community Development for the Town of Granby, who wrote to the Commission on September 4, 1992 and advised the Commission that the location of 10 Hartford Avenue already had three restaurants, The Granby Chinese Restaurant, ABC Pizza and Zuliani's, a delivery and take-out restaurant with no seating, which was to be opening in the near future. Mr. Armentano advised the Commission that the proposed restaurant (Ivory's) would require a special permit and that a special permit was required for the billiards activity and the serving of alcoholic beverages under 3.5 and 8.3 of the Regulations. Accordingly, the Commission was well aware of the requirement for a special permit in order to establish more than three restaurants. It is further noted that a part of the record of this case reflects a letter to Mr. Kevin Daly of the Daly Development Company dated February 22, 1989 advising him of the approval of his site plan. Paragraph 6 of the letter to Mr. Daly from the Planning and Zoning Commission clearly further reflects "any additional restaurant space must receive a special permit from the Commission;" Accordingly, the claim of the plaintiffs that the Commission violated a condition of the Planning and Zoning Commission previously established in the site plan of February 21, 1989 is without merit. The Applicant/Defendant in this case did apply for and was granted a special permit.
 II.
A second claim of the plaintiffs is that in issuing the permit for retail sales of alcoholic beverages, a restaurant, and a commercial recreational use the Commission violated its own regulations by permitting a multiple usage of the same premises.
Sec. 3.5.2 of the Regulations allow the Commission to grant special use permits for the following uses, subject to the applicable criteria of Sec. 8.2.
3.5.1. The following uses shall be permitted:
3.5.2.1 Restaurants or establishments serving food for consumption inside a building . . .
3.5.2.2 Commercial, educational or recreational CT Page 7664 services:.
3.5.2.8 Retail sales or (sic) alcoholic beverages . . .
The plaintiffs admit that special permits may be granted within a C-2 Zone for each of the activities which are requested by the defendant Ivory's, Inc., but believe that the Regulations do not allow two or more uses to be combined in a single property.
The plaintiffs concede there is no specific language in the regulations which prohibit the Commission from permitting multiple usage of permitted activities.
The plaintiffs argue that since mixed uses are specifically provided elsewhere in the regulations for an economic development zone, the court should conclude that since it was not specifically addressed in the regulations relating to special permits, that the court should construe the regulations to prohibit multiple usages.
 The burden is on the plaintiffs to demonstrate that the board has acted improperly in making its decision. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). A decision of the board will be reversed only when the plaintiff has proven that the decision was unreasonable, arbitrary or illegal. Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. Therefore, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board. Baron v. Planning Zoning Commission, supra, 257; Molic v. Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 a.2d 1049 (1989). . . . When we encounter a situation in which more than one construction is possible, we will adopt the construction that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. Maciejewski v. West Hartford, 194 Conn. 139, 151-52, 480 A.2d 519 (1984).
CT Page 7665
New London v. Zoning Board of Appeals, 29 Conn. App. 402, 406
1992).
Accordingly the court finds that the construction and interpretation of the regulations by the Commission was reasonable and appropriate.
 III.
The third issue of consequence raised by the plaintiffs relates to the jurisdiction of the Commission over the application. The plaintiffs identify two problems with respect to the application. First, they raise the issue of whether their applicant was a "person" within the contemplation of the regulations and, second, whether the applicant had sufficient legal interest to pursue the application. In order to resolve these issues, some background is necessary.
Section 1.4 of the regulations "definitions" provides that a person . . . "includes a partnership, corporation or other entity." Further, on the application form to appear before the Granby Planning Zoning Commission, the form provides in para. 1 as follows:
 The applicant must be the property owner, the property owner's agent, the town of Granby, or someone with a direct financial interest in subject property and said interest shall be explained.
The application in the instant case was filed by "Ivory's Corp." in August of 1992. The public hearing was held on September 8, 1992 and the decision was rendered on September 22, 1992.
At the public hearing, the defendant Dale Netz spoke on behalf of the application and identified herself, Dan Sullivan and the defendant Cosmo Tedone as "those involved in the project." After the defendant Dale Netz fully described the restaurant and billiard parlor that the applicant was hoping to develop, Commissioner Brown asked the defendant Dale Netz specifically "who actually is the applicant?" To which the defendant responded "Ivory's Corporation is the applicant and Dan Sullivan and myself are the primary stockholders in Ivory's." After further pursuing the inquiry, Mr. Brown determined that Dale Netz and Dan Sullivan were the sole CT Page 7666 stockholders of Ivory's Corp. A short time later in the hearing, Dale Netz indicated "it's name is going to be Ivory's. The Coach and Four is a separate entity so that in itself is one reason why Dan and I are going to be Ivory's Corporation. And Cosmo will be one of the officers." (Emphasis added).
Following the public hearing, the Commission rendered its decision on September 22, 1992 and the plaintiffs thereafter instituted this appeal. During the course of the appeal, the plaintiffs filed motions for production and discovery. From these attempts at discovery, the plaintiffs ascertained that the applicant Ivory's, Inc., did not file a certificate of incorporation until October 14, 1992, approximately five weeks after the public hearing and approximately three weeks after the special permit had been granted. The discovery and evidence presented at the public hearing further indicate that neither Ivory's Corporation, Dale Netz or any other party defendant had any present possession or control or right to take possession or control of the premises in the future. The applicants had merely a letter of intent to enter a lease.
Both the plaintiffs and the defendants in their respective briefs rely on the holding of the Supreme Court in Richards v. Planning Zoning Commission, 170 Conn. 318 (1976). In that case, the Wilton Board of Education applied for and was granted a special municipal use permit on land that was owned by the Town of Wilton. The applicant, Board of Education, was attempting to obtain a permit to park school buses on property that was owned by the Town of Wilton. The owner of the property, i.e., the Town of Wilton, approved of the application, the applicant had extensive control of the site and the applicant clearly was a legal entity. In the instant case, the applicant Ivory's had no control over the subject property and had dubious legal status at the time it applied for and received the special permit. It is difficult for the court to conclude that had the Granby Planning Zoning Commission known that Ivory's Corporation was not, in fact, a duly authorized Connecticut corporation and had neither a legally recognizable interest in the property nor a direct financial interest enforceable by law that the Commission would have entertained the application until such time as the applicant had (a) properly qualified as a Connecticut corporation and (b) entered into a legally enforceable arrangement sufficient to have a "direct financial interest in the subject property." CT Page 7667
Since the corporation did not come into existence until the Secretary of State issued a certificate of incorporation in accordance with Conn. Gen. Stat. 33-289(a) and since the applicant failed to establish that it had a direct financial interest, the appeal must be sustained.
FOLEY, J.