JAMES J. FEDORICH *v.* ZONING BOARD OF APPEALS OF THE TOWN OF TORRINGTON ET AL.

(two cases)

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 14—decision released August 7, 1979

*Peter C. Herbst,* with whom, on the brief, was *John P. Febbroriello,* for the appellant (plaintiff).

*Thomas F. Wall, Jr.,* with whom, on the brief, were *Gerald R. Reis, David J. Frauenhofer* and *Robert A. Wall, Jr.,* for the appellees (defendants).

LONGO, J. The plaintiff appeals from a judgment of the Court of Common Pleas which, in the first case, dismissed an appeal from the action of the defendant Torrington zoning board of appeals granting a building permit to the defendant Joseph Guarnieri, and, in the second case, vacated a temporary injunction which had been issued restraining the defendant Guarnieri from placing on certain property a structure, the nature of which is the dispositive issue on this appeal, intended for dwelling purposes.

The undisputed facts underlying this appeal are as follows: On June 16, 1977, the defendant Guarnieri was granted a building permit to place a concrete foundation for a structure designed for dwelling on property adjacent to land of the plaintiff, James J. Fedorich, on which land the plaintiff's residence is located. The structure had been located on East Main Street, Torrington, and had been used as a home by the defendant Guarnieri for the previous seven years. The plaintiff appealed the issuance of the building permit to the defendant board, alleging that the issuance of the permit was illegal in that the defendant intended to place a trailer, as

defined by § 105 of the Torrington zoning regulations, on the foundation without complying with § 520 of the regulations, discussed more fully within, governing the off-street parking and the use of trailers. The board upheld the issuance of the permit, determining that the structure was not a trailer within the meaning of the regulations, and the plaintiff appealed that decision to the Court of Common Pleas.

On October 11, 1977, the Torrington superintendent of buildings issued a moving permit to Guarnieri to allow him to place his dwelling structure on the property adjacent to that of the plaintiff. The plaintiff appealed the issuance of this moving permit to the defendant board and, pending the hearing on the appeal, obtained from the court a temporary injunction restraining Guarnieri from placing the structure on the property.

The plaintiff's appeal from the issuance of the building permit and his action for a permanent injunction restraining Guarnieri from moving and placing the dwelling structure on its foundation were combined by stipulation of the parties. The court dismissed the appeal and vacated the temporary injunction, reasoning that the defendant board's decision determining that Guarnieri's structure was not a trailer under the zoning regulations was not unreasonable, arbitrary or capricious. We granted certification, and the present appeal has ensued.

The single issue in this case is straightforward: whether the trial court erred in determining that the defendant board's classification, under § 105 of

the Torrington zoning regulations,[1] of the defendant Guarnieri's structure was not illegal, arbitrary, unreasonable or an abuse of discretion. If it was not, the action of the board must be sustained.[2] *Miclon* v. *Zoning Board of Appeals,* 173 Conn. 420, 422, 378 A.2d 531; *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 752, 345 A.2d 9; *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 385, 232 A.2d 922. The trial court decided the appeal on the record returned by the board and made no finding of facts. In such a case "[w]here a zoning authority has stated its reasons for [its action] . . . the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 543, 338 A.2d 490. "The [board's action] . . . must be sustained if even one of the stated reasons is sufficient to support it." *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 25–26, 376 A.2d 385. In reviewing the record, the trial court could not substitute its own judgment for that of the zoning authority; *Horvath* v. *Zon-*

---

[1] Section 105 of the Torrington zoning regulations defining "trailer" provides: "Trailer: Any of the various types of vehicles designed to be drawn by a motor vehicle and to be used for human habitation or for carrying on a business, excluding however vehicles used only for the transportation of materials, products or animals."

[2] If the zoning board of appeals had determined that the defendant Guarnieri's proposed structure was a "trailer" within § 105 of the Torrington zoning regulations, Guarnieri's use of the structure as a dwelling would have been conditioned upon the fulfillment of the prerequisites of § 520 of the regulations, which allows for the use of a trailer for family living purposes only after the obtaining of a special exception following a public hearing, approved by four members of the board.

*ing Board of Appeals,* 163 Conn. 609, 316 A.2d 418; *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160; and because the local authority is closer to the circumstances and conditions which create the problem and shape its solution, zoning authorities are given wide discretion in determining public need and the means of meeting it. *Goldberg* v. *Zoning Commission,* supra, 27; *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 312, 278 A.2d 799; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597. In light of these principles, the trial court was correct in concluding that the board's classification of Guarnieri's structure was not illegal or an abuse of discretion.

The only issue before the court was whether the structure was a "trailer" within the meaning of § 105 of Torrington's zoning regulations, and the court's reasoning was correct on the basis of the record returned by the defendant board. In that record, the board stated: "It was the opinion of the majority members of the Board that the Superintendent of Buildings did not act arbitrarily when he issued the permit but based his decision on previous Zoning Board of Appeals decisions and on a March 11, 1971 policy of the Planning and Zoning Commission which stated that Mobile Homes are considered permanent dwellings when placed on permanent foundations of concrete." The "policy" adopted in 1971 to which the board referred is interpretive of § 105 of the zoning regulations and clearly demonstrates that prefabricated structures, when placed upon concrete foundations, would be considered by the zoning authority to be permanent dwellings and

not "trailers" within § 105.[3]  There was evidence in the record returned to the trial court that, pursuant to this policy, the Torrington zoning authority had issued a number of building permits for structures which, like Guarnieri's, were to be placed on permanent foundations; that Guarnieri's structure, prior to being moved, had been lived in as a home for seven years; that the defendant's home would be constructed on a permanent, continuous foundation approximately four feet deep and would be permanently connected to city water and sewer systems; and that the home had no wheels on it at its previ-

---

[3] The planning and zoning commission's policy in relation to trailers, mobile homes and the like, provides:

"The Planning and Zoning Commission after an exhaustive review of technical studies, and careful deliberation, has prepared a well considered analysis of the proposal to establish Mobile Home Park Regulations in Torrington.

It is the view of the Commission that the establishment of Mobile Homes or Pre-fabricated Structure Parks is not in the best interests of all the citizens in the community.  While recognizing that the need for adequate shelter is of paramount concern for many at all age and income levels, the Commission feels that the restriction of such construction to only designated sections of the City would result in economic discriminatory zoning.  This action at a time when revolutionary advances are being made in the field of housing construction would be premature and unwise.

Therefore the present practice of permitting Mobile Homes to be erected on sites that meet the requirements of the zoning district in which they are to be located will continue to be the policy of the Planning and Zoning Commission.

*Mobile Homes, which constitute one type of pre-fabricated structure, are considered permanent dwellings when placed upon concrete foundations.*  This is in comparison to trailers that have wheels attached which are permitted only by a Special Exception granted by the Zoning Board of Appeals.  Mobile Homes meet the basic needs of many young couples as well as the elderly.  Severe limitations as to their use, or requirements as to their minimum size above that deemed essential by Health and Safety Standards, would impose an unnecessary hardship upon those least able to afford it.  For this reason considerations to prohibit Mobile Homes in the City or to require a large minimum floor area were dismissed." (Emphasis added.)

ous location and would have none at its new location. On the basis of this evidence, the trial court could reasonably have concluded that the board did not act illegally in determining that Guarnieri's structure was not a trailer, but a type of more stable and lasting dwelling, adapted to use as a permanent, fixed residence falling within the ambit of the board's 1971 policy interpreting § 105 of the zoning regulations permitting such structures.

There was evidence in the record returned to the trial court that the Torrington corporation counsel, after personal inspection of the proposed dwelling, was of the opinion that the particular dwelling could not reasonably be determined to be a type of vehicle designed to be drawn by a motor vehicle, within the ambit of § 105 of the regulations. If the trial court's conclusions, based upon the testimony included in the record returned to it, are not illogical or unreasonable, it is not this court's function to retry the case. *Ramadei* v. *Saccavino,* 150 Conn. 700, 190 A.2d 489; *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596. The court, moreover, was entitled to accord considerable deference to the policy adopted by the defendant board in 1971, interpretive of § 105 of the zoning regulations, under which the board determined that Guarnieri's structure was not a prohibited trailer. See *Burwell* v. *Board of Selectmen,* 178 Conn. 509, 423 A.2d 156; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (*Loiselle, J.,* concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699; *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 561, 59 A.2d 290.

The plaintiff, notwithstanding the above, attaches significance to two cases which, it is claimed, indi-

cate that "mobile homes" implicitly are included within statutory definitions of the term "trailer." See *Karen* v. *East Haddam,* 146 Conn. 720, 155 A.2d 921; *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 155 A.2d 754. In both of these cases, constitutional attacks were mounted against the validity of local ordinances prohibiting mobile home parks. In *Hartland* v. *Jensen's, Inc.,* we held that the language of a particular ordinance concerning the off-street parking of certain vehicles, was broad enough to include both "trailers" and "mobile homes." In *Karen* v. *East Haddam,* we found nothing in the record to furnish a basis upon which to treat trailers and mobile homes differently. Both cases are, however, inapposite. First, as noted by the trial court, neither case mandates that the words "trailer" and "mobile home" be treated synonymously. There was, furthermore, no evidence, as in the present case, that either East Haddam or Hartland had followed a long-standing policy which classified structures attached to concrete foundations as permanent dwellings, without the ambit of the local definition of "trailer," or that either of those towns had consistently granted building permits for such structures, as has Torrington in the present case. *Karen* and *Hartland* involved structures which, in common understanding, would be perceived as non-permanent, mobile dwellings, arranged in such a fashion as to resemble a trailer or mobile home park. The situation in the present case, in view of the evidence that the defendant Guarnieri's structure was to be permanently affixed to a concrete foundation and connected to public utilities facilities, is quite different. We note also that many courts have held that the placement of a mobile home on a permanent foundation, with wheels

detached, and connected to utilities and sanitary services, constitutes a permanent dwelling, as opposed to a trailer, as defined in various ordinances. See, e.g., *Morin* v. *Zoning Board of Review,* 102 R.I. 457, 232 A.2d 393; *Lescault* v. *Zoning Board of Review,* 91 R.I. 277, 162 A.2d 807; *Rundell* v. *May,* 258 So. 2d 90 (La. App.); *State* v. *Work,* 75 Wash. 2d 204, 449 P.2d 806; *Kimsey* v. *Rome,* 84 Ga. App. 671, 67 S.E. 2d 206; *Corning* v. *Ontario,* 204 Misc. 38, 121 N.Y.S. 2d 288; see additional collection of cases at annot., 96 A.L.R.2d 232, 251-53; 101 C.J.S., Zoning § 146.

The cases adverted to above are significant only in passing, since the zoning regulation here in question is particular to Torrington, and its meaning must be determined with reference only to the experience of the Torrington zoning authorities in applying it. The reasoning expressed in these cases is, however, consistent with the town's policy treating structures like the defendant Guarnieri's as permanent dwellings, and not as trailers. In view of that policy and the authorities above, we find no error in the trial court's determination of either of the present cases.

There is no error.

In this opinion the other judges concurred.