[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs herein appeal the action of the Glastonbury Town Council in granting an amendment to the Somerset Square Planned Area Development Zone, requested by the defendants ABS Development Company, as concerns the use of the northwest quadrant of said Somerset Square PAD to construct a supermarket and retail development.
The Somerset Square Planned Area Development Zone consists of a tract of land of approximately 80 acres. The zone, designated as Somerset Square, was created in 1985 by the Glastonbury Town Council, pursuant to Section 4.12 of the Glastonbury Zoning Regulations. The zone was superimposed upon an underlying zone. The 15 acre northwest quadrant of the 80 acre zone was designated for the purpose of office construction and use. The quadrant remained vacant and unused. On June 16, 1990, ABS Development Company applied for permission to devote the quadrant, being a distinct and separately owned 15 acre parcel, to "Retail development to be anchored by 64, 500 +/- SF detached retail/restaurant use building with supermarket." On January 8, 1993 the Glastonbury Town Council granted the application.
The plaintiffs who prosecuted the appeal are as follows: Lee Hanson and Terri Gifford who own and live at a house at 395 Naubuc Avenue, which is slightly more than 500 feet distant from the 15 acre northwest quadrant of Somerset Square, but which is across the street from a portion of Somerset Square; Mary Randazzo, trustee, whose property is across Main Street from a portion of Somerset Square, on which property of Randazzo is operated a restaurant, and which property is not adjacent to the 15 acre northwest quadrant of Somerset Square; Loren Andrea, whose property is north of Somerset Square and separated from it by a highway, and which property is not adjacent to the fifteen acre northwest quadrant.
I. Aggrievement
A. Classical Aggrievement.
The parties are at issue as to whether the plaintiffs, or any of them are aggrieved parties. The court heard testimony on the question of aggrievement as to each of the plaintiffs. CT Page 5032
As to the plaintiffs Hanson and Gifford, the court finds that they are the owners of the residence known as and located at 349 Naubuc Avenue. The court credits the testimony of the plaintiff's traffic expert James Barbaris that the increase in traffic to be caused by the supermarket is greater than would be caused by the originally proposed/approved office complex. Further that the distribution of traffic being seven days a week, and heavy in the evenings, is substantially more disruptive to the use of the residential property than would be the office use, as office use follows the more traditional workweek pattern of use.
The court credits the testimony of the plaintiff's real estate agent, Peter Marsele, that the supermarket would have an adverse effect upon the fair market value of this residential property, greater than would be the office facility use, due to traffic increase, anticipated noise, sight line factors and his professional experience and judgment concerning the intangible but realistic effect upon prospective buyers of proximity to a supermarket versus proximity to an office facility.
As to the plaintiff Randazzo, the court finds that the difference in traffic volume and distribution in front of her property, upon which the restaurant is located, as testified to by Barbaris, as compared to the originally approved office use, is such as to have a substantial adverse effect upon the use of that property.
As to the plaintiff Andrea, the court determines that the anticipated increase in traffic on the road bordering his property, supermarket compared to office use, is significant and is such as to demonstrate classical aggrievement.
The effect upon these properties, due to their proximity to the proposed retail-supermarket is substantially different than would be the effect upon the community as a whole ". . . the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole CT Page 5033 Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." Munhall v. Inland Wetlands Commission,221 Conn. 46, 51 (1992).
"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected.Hall v. Planning Commission, 181 Conn. 442, 445 (1980).
"Standing is not a technical rule intended to keep aggrieved parties out of court . . . ." Di Bonaventura v.Zoning Board of Appeals, 24 Conn. App. 369, 373 (1991).
Each of the plaintiffs have demonstrated classical aggrievement.
B. Statutory Aggrievement
Each of the plaintiffs owns land which is separated from the 80 acre Somerset Square Planned Area Development zone by a public highway. The plaintiffs claim statutory aggrievement by virtue of the provision of General Statutes § 8-8(a)(1) which states ". . . aggrieved person includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Here, of course, the town council is acting in its zoning capacity.
The plaintiff claims that the granting of permission to change the northwest quadrant is a change in zone. The defendant claims that the northwest quadrant, being a separate parcel of land under separate ownership is to be treated singularly and consequently is not a change in zone.
First, the court determines that, as concerns the plaintiffs Hanson and Gifford, their property is within 100 feet of a portion of Somerset Square, the width of Naubuc Avenue being less than 100 feet. As to each of the plaintiffs, the court determines that the actual width of the roads is not material, as the law is clear that owners of real property own the land over which a public highway is established, subject to the easement of the public to CT Page 5034 use the road. See Antenucci v. Hartford Roman CatholicDiocesan Corporation, 142 Conn. 349, 356 (1955).
Hence, as to each of the plaintiffs this ownership of the underlying land causes their land to abut the Somerset Square Planned Area Development Zone at a point in the land over which the public easement is superimposed.
An owner of land within a zone is an aggrieved party where the Zoning Authority changes the use or uses permitted within a zone. See footnote 3, Timber TrailsCorporation v. Planning Zoning Commission, 222 Conn. 374
376 (1992). "Whether the plaintiffs own property within the affected zone or within 100 feet of the affected zone is not significant for purposes of establishing statutory aggrievement. In both instances there is statutory aggrievement." Cole v. Planning Zoning Commission,30 Conn. App. 511, 515 (1993).
Although the Planned Area Development Zone is somewhat of a hybrid, the uses permitted in the establishment of, or in the change of a Planned Area Development use requires a Final Development Plan. The initial final development plan sets forth the specific approved uses for all of the land, the entire tract, although development may take place in stages. In that sense it is an entire self-contained zone, limited to its own specified uses. Conversely, the ordinance specifically contemplates that changes may be thereafter made to allow other zone-permitted uses in the specific sectors of the tract. (Ordinance Sec. 4.12.8). Both the establishment of the zone and changes in the originally established uses are required to conform to the standards and conditions for the granting of special permits as listed under the provisions of Ordinance 12.1 thereby establishing more detailed criteria than is generally applicable to changes in zone under the established law of this state. But the ordinance allows broad legislative discretion in deciding an application which may be in technical compliance, but deemed inappropriate.
This concept is called a "floating zone." It differs from a special permit. ". . . if a landowner meets the conditions set forth for a special exception, the Board is bound to grant one, but in the case of a floating zone CT Page 5035 discretion is maintained and additional limitations may be imposed. More control is retained by the zoning board because it is acting legislatively." Laurie v. Planning Zoning Commission, 160 Conn. 295, 305 (1971).
Although a departure from the original plan may be categorized as a change from one permitted use to another, similar to the concept of special permit, and not a change in the overall land use permitted for all sectors of the entire zone so as to allow a previously prohibited use to exist throughout the entire zone, yet the court determines that the applied for change from office to grocery store — retail is a sufficient departure from the original approved uses in the sector of this Planned Area Development to fall within the concept of a zone change having some effect upon the character of the zone, for the purposes of, but limited to the purposes of determining statutory aggrievement. Each of the plaintiffs own property abutting the zone.
The court determines that under the circumstances of this case the plaintiffs have each proven statutory aggrievement. Cole v. Planning Commission, supra.
The plaintiff Andrea had entered into an unrecorded Right of First Refusal Agreement with the developer on May 25, 1985 as concerns any supermarket or similar grocery store of 7500 or more square feet within Somerset Square. On May 15, 1992 he executed a Partial Release of Right of First Refusal, releasing the then owners, Bank of Boston, Connecticut, as to the northwest quadrant, to avoid having to become a party to a foreclosure action as to this northwest quadrant. The argument is made that the right of first refusal being only partially released as to the northwest quadrant, the plaintiff's right of first refusal as to the remainder of the property causes him to be in the category of a person owning land which abuts the northwest quadrant, per General Statutes § 8-8(a)(1).
The court determines that the right of first refusal is not such an interest in land as to give to this plaintiff either a legal right or an equitable right by contract, to demand the conveyance to him of an interest in the adjacent property, as would be an option or a bond for deed. At best, the right of first refusal is a contractual restraint upon alienation, and is not an affirmative CT Page 5036 agreement, conditional or unconditional, to sell or to purchase property. The fact of a residual right of first refusal as to the purchase/sale of adjacent property would not confer the status of statutory aggrievement upon the plaintiff Andrea.
II. The Merits of the Appeal
A. The following background facts are appropriate to determine the issues of this appeal.
The zone in question is an approximately 80 acre tract of land in Glastonbury. The tract, known as Somerset Square, was established as a Planned Area Development Zone by the Town of Glastonbury in 1985, under Sec. 4.12 through Sec. 4.12.9 of the Glastonbury Zoning Regulations.
The ordinance provides for the establishment of zones for specified development purposes, superimposed upon a previously underlying zone (Reg. 4.12.1). The ordinance requires a Final Development Plan specifying the particular use or uses as to the segments of the entire tract. The plan, if approved, can be developed or constructed in stages, called "Phasing" (Reg. 4.12.6; 4.12.7). Minor changes in the approved plan requires only the written approval of the Town Manager, but ". . . a change in an Approved Final Development Plan which is not considered to be a minor change . . ." shall be considered and processed as a completely new application for a change in zone to Planned Area Development." (Reg. 4.12.8).
The northwest corner of Somerset Square, the fifteen acres, was originally designated as office use. The office use was never implemented. The owner of the northwest quadrant, ABS Development Company/Connecticut Commercial Land Corp., filed an application with the Town of Glastonbury on June 16, 1992, to construct in the northwest quadrant "Retail development to be anchored by 64,500 +/- supermarket. Initial phase to include 9000 +/- SF detached retail/restaurant use building and supermarket."
The procedures set forth in the ordinance are as follows. The applicant submits a preliminary development plan. A hearing is held by the Town Council and the Town Plan and Zoning Commission, jointly or severally, with CT Page 5037 public notice. "The purpose of this hearing is to receive input from the public and comment and suggestions from the Commission and Council which would allow the applicant to decide whether to proceed with the expense of the preparation of the Final Development Plan . . . ." Any opinions or suggestions expressed by members of the Commission or Council "are tentative only and do not hinder or preclude such member from making an independent judgment as to the Final Plan of Development based upon all evidence in the record at the time of a final decision." (Reg. 4.12.4a).
It is obvious that the purpose of the procedure is designed to alert an applicant as to whether the proposal is so inappropriate, or that the development plan is so deficient, that to proceed with the proposal as submitted would subject the applicant to a high risk of ultimate rejection. The benefit of this procedure to both the applicant and the public is obvious. The approval or disapproval of the Preliminary Plan is neither an affirmative decision on the application nor is it preclusive of the applicant's right to proceed with the submitted Preliminary Development Plan as submitted or thereafter modified and detailed, as a final development plan.
A final development plan is then submitted. (Reg. Sec. 4.12.4). The Town Plan and Zoning Commission is then required to review the final plan for the plan's compliance with the twenty-four criteria of Reg. Sec. 4.12.4 "and make an appropriate recommendation thereon to the Town Council at a public meeting." Reg. Sec. 4.12.4. The ordinance does not require a public hearing as a condition to the recommendation of the Commission.
One of the 24 criteria of Reg. Sec. 4.12.4 allows the Zoning Commission and the Town Council to obtain "a statement from any other advisory committee whose opinion is deemed appropriate by the Town Plan and Zoning Commission and Town Council. Such an opinion was obtained from the Economic Development Commission (EDC) as to this application. The regulations do not require a public hearing as pertains to the arriving at a recommendation or opinion by the various commissions, including the Economic Development Commission and the Town Plan and Zoning CT Page 5038 Commission.
A public hearing is thereafter held by the Town Council. Neither the recommendation of the Town Plan and Zoning Commission nor that of any other Commission is in any fashion binding upon the Town Council. The opinions have no legal force or effect. The applicant is at full liberty to pursue the application regardless of any opinion or recommendation of any of the commissions. Reg. Sec. 4.12.4.
B. The reasons for appeal, determined in the order as briefed by the plaintiffs.
1) Reason for appeal: The Council failed to assure proper notice of the application.
Section 16 of the regulations states that "notice of the Public Hearing shall be sent by mail at least 10 days before said hearing to the Assessor's record owners of land within 500' of the area to be rezoned."
The defendant gave the requisite written notice to the owners of land which were within 500 feet of the 15 acre northwest quadrant of Somerset Square PAD. The only parcel sought to be rezoned is the 15 acre northwest quadrant of the zone. No other property within the zone was sought to be changed or altered. Accepting the proposition that a change within the zone is considered to be a change in zone, rather than a converse interpretation that the change in use of a segment is not a change in zone, does not advance the plaintiff's contention.
The cases previously cited, Timber Trails Corporationv. Planning Zoning Commission, supra, and Cole v.Planning Zoning Commission, supra, do not stand for the proposition that merely because a person has standing for the purpose of aggrievement, such determination geographically places an aggrieved party's property physically within 500 feet of the parcel which is the subject of the proposed change in use. To adopt such an interpretation would require that any type of change in any zone in a community would require that every owner of property within the zone, or abutting or within 100 feet of CT Page 5039 an affected zone must receive specific written notice under these customary provisions of local ordinances. Such interpretation would be totally irrational, and completely inappropriate.
Further the court credits the testimony of Kenneth Leslie, Director of Community Development of the town of Glastonbury that it is his function, for the zoning activities, to send out the specific notices. In each other circumstance where requests were submitted for change in use the notices were sent to persons within 500 feet of the particular parcel sought to be changed in use. The Court accepts the interpretation of the local authority as to its own regulations. See Fedorich v. Zoning Board ofAppeals, 178 Conn. 610, 614, 616 (1979); Shippee v. ZoningBoard of Appeals, 39 Conn. Sup. 436, 442 (1983); New Havenv. United Illuminating Company, 168 Conn. 478, 493 (1975).
Lastly, these ordinance provisions are provisions for the purpose of giving personal notice. See Lauer v. ZoningCommission, 220 Conn. 455, 462 (1991). They do not go to jurisdiction. Bearing in mind the vigorous opposition made by, for and on behalf of the plaintiffs in this matter it is difficult to envision that the plaintiffs did not have actual knowledge of the proceedings; or to contemplate a manner in which the plaintiffs would have been harmed by a lack of written personal notice even if they had been so entitled to such personal notice in the first instance.
The Court concludes that this reason for appeal cannot be sustained.
 2) Reason for Appeal: The failure of the Commission and the EDC to provide a fair hearing and proper notice compromised the Council's decision.
As to the publication of notice of decision the record reveals that on October 22, 1992 the zoning commission published in the Glastonbury Citizen newspaper the decision of the Town Plan Zoning Commission to unanimously favorably recommend to the Town Council the application of ABS Development Co. See record Exhibit 111. The contention of the plaintiff as to failure to publish notice is without merit. CT Page 5040
As to the claimed failure of the Economic Development Commission and/or the Town Plan Zoning Commission to provide fair hearings. As previously noted, Regulations Sec. 4.12.4 provides that the Zoning Commission shall review the Final Development Plan and make an appropriate recommendation, to the Town Council at the Council's public hearing. In connection with arriving, at that recommendation the Zoning Commission, and also the Town Council for its purposes, may obtain a statement from any other advisory committee, here the Economic Development Commission. Regulation Sec. 4.12.4.
The recommendations of the Zoning Commission, which had available to it the opinion of the Economic Development Commission, are advisory only. There is no requirement whatsoever, either by statute or ordinance, that either Commission hold a public hearing.
The plaintiff anticipates in his brief that the defendant will contend that these referrals were only for advisory purposes. The plaintiff cites no authority to support his position that an advisory referral requires a public hearing.
Although the Zoning Commission was not required to do so, the plaintiff's attorney concedes, in the transcript of the Council Meeting of November 24, 1992, that he was given the opportunity to address the Zoning Commission at its advisory meeting. He was in fact given the opportunity to, and took advantage of the opportunity, to make a presentation at the public forum of the Zoning Commission. His principal complaint is that he should have had the opportunity to cross-examine the applicant at that session.
A zoning authority, here the Town Council, can seek the advice of outside agencies. There is no rule of law that requires that the public participate in the advisory process, let alone be afforded the prerogative of cross-examination.
There is nothing in the record to indicate that the Town Council was either bound by, or thought that it was bound by those recommendations. The Town Council was made fully aware of the fact that the Commission's recommendation was made without the process of cross-examination, which, in the mind of one of the members of CT Page 5041 the Council would have been a preferable process. (Plaintiff's brief, p. 24). The Council was fully able to take this into consideration in determining what weight, if any, it would give the recommendation of the advisory reports of the Commission.
There is no evidence to indicate that the Council relegated its function to the advisory commissions. Or that it thought that it was bound by those advisory opinions. In fact, several of the council members rejected the recommendations in voting against the application.Spero v. Zoning Board of Appeals, 217 Conn. 435, 445
(1991).
The regulation itself properly relates the role of the Commission as being advisory only, and non-binding. Section 4.12.4 states "Regardless of the recommendations of the Commission the applicant shall have the right to apply to the Town Council for a change of zone." These circumstances are distinguished from the perplexing problems caused when a zoning authority makes its approval conditional upon the thereafter approval of another agency over which it has no control, as reflected in the factual circumstances of Laurie v. Planning Zoning Commission,160 Conn. 295 (1971).
The plaintiffs' contentions as to this reason for appeal are without merit.
3. Reason for Appeal: The PAD Amendment is inconsistent with the Comprehensive plan, the plan of development and the regulations.
The plaintiffs properly acknowledge in their appeal that the PAD Somerset Square, as originally established, did envision retail use as part of the original plan. They apparently assert that the retail use is for the purpose of serving the needs of only the occupants of the other sections of Somerset Square. No such limitation is set forth in the ordinance.
Kenneth Leslie, Development Director of the Town of Glastonbury in his testimony, properly and correctly referred to the acts of the Council in 1985. "With the stage set in 1985, this Council was presented with an CT Page 5042 application to rezone 80 acres, about 40% to 50% of the major activity center, to a PAD. As part of that approval, this Council approved a family of uses, a family of land uses within this area. They were the exact same family of uses that were recommended in the plan of development: retail, office and hotel." (Trans. 1/7/93, p. 65) He further pointed out "This was always intended to have a mix of uses complimentary to the Commercial Center of town." (Trans. 1/7/93, p. 66)
The prospect of a future supermarket was neither uncontemplated nor a matter of particular surprise. In fact one of the plaintiffs, Mr. Andrea, on May 27, 1985, specifically obtained from the developer a contract of Right of First Refusal as concerns ". . . such offer shall be for a supermarket. . . ." The contract acknowledges the possibility of a future supermarket at this development.
Further, the regulations themselves, § 4.12.8 contemplate the prospect of changes in the initial Final Development Plan to allow for additional uses within the group of possible uses, under the procedures governing this application.
In certain circumstances even the extension of business into a business-prohibited residential zone has been condoned despite a contention of spot zoning. SeeAnderson v. Zoning Commission, 157 Conn. 285, 294 (1968). It is difficult to envision a prohibition of this retail use as spot zoning where the very zone, the PAD, contemplates the prospect of retail use. The change as approved was specifically in accordance with and in harmony with the comprehensive plan. Loh v. Planning ZoningCommission, 161 Conn. 32, 38 (1971)
The contention of the plaintiffs that this change is inconsistent with he [the] comprehensive plan or is "spot zoning," is without merit.
4. Reason for Appeal: The Council improperly denied plaintiffs the right to cross-examine ABS's witnesses.
The defendants, through their attorney, requested at the meeting of the Town Council of December 8, 1992, to cross examine the Attorney for the proponents, and his CT Page 5043 witnesses. The Chairman stated "I'm giving you the right but I'd also like to limit the time." (Hearing 12/8/92, p. 40) The plaintiff's attorney then posed several transcript pages of questions, many of which were rhetorical, which were responded to by the attorney for the proponents. Between the plaintiff's questions and the applicant's answers the plaintiff's attorney was permitted to, and did produce the testimony of two experts, Mr. Miller and Mr. Marsele to "tackle our response to these various issues." These experts critiqued in detail the opinions of the proponents' experts, thus effectuating an in depth analysis and critique of the experts of the proponents. This was followed by a response of the proponents' attorney to the questions which were posed to him. The transcript reveals that earlier in the hearing of 12/8/92, the attorney was given the opportunity to pose questions to the proponents, but deferred to do so until later in the evening, as above described.
The record reveals that the plaintiffs asked the questions directly, through in an elaborate series of questions. The opponents were not precluded or limited by the Council as to the scope or the subject of the questions. The questions were responded to, even though some of the questions were rhetorical. It is also noted that the plaintiffs were not in fact limited as to the amount of time afforded them to fully address the issues.
The plaintiffs were not denied the right of cross-examination, nor were they denied the right to offer rebuttal evidence. See Pizzola v. Planning ZoningCommission, 167 Conn. 202, 207 (1974). The Council offered to all parties a full opportunity to be heard, including the airing of the views of both the proponents and the opponents of the application, citizens as well as experts produced by both sides, throughout a hearing which lasted for three nights. It is difficult to envision a hearing process which gives to all parties a more complete opportunity to fully present their views to a zoning authority, and to pose questions to and critique the evidence and the views of the opposing sides of the issue. See Dram Associates Planning Zoning Commission,21 Conn. App. 538, 543 (1990). The right to cross-examination in zoning hearings does not imply strict adherence to courtroom procedures, but rather a fair opportunity to ask CT Page 5044 questions to test the evidence of the adverse party. That opportunity was afforded and implemented.
The defendants counter the plaintiff's contention as to cross-examination in further citing Dragan v.Connecticut Medical Examining Board, 223 Conn. 613 (1992). The defendants contend that had the plaintiff been dissatisfied with the Council's procedure concerning cross-examination they should have protested the procedure at the Council hearings, rather than to await a finding so as to hope for a procedural error in the event that they did not prevail. The Court notes that the final hearing was not conducted until a month after the December 8 hearing, to wit January 7, 1992, which would have given the plaintiffs as adequate opportunity to petition this court for an appropriate order to resolve any claimed inadequacy of procedure, if such claim had been made to the Council and if the Council had not addressed any such claim to the plaintiffs satisfaction.
The courts have consistently rejected the concept of awaiting the prospect of a favorable decision rather than to raise a question of impropriety at a timely stage of the proceedings. See Krattenstein v. G. Fox Co., 155 Conn. 609,616 (1967).
The plaintiffs' contention concerning this reason for appeal cannot be sustained.
5. Reason for Appeal: Council members unlawfully predetermined their decision and conducted ex parte meetings with proponents of the application
The plaintiffs' claim as concerns the assertion of prejudgment are twofold. First, because the members of the Council, at the preliminary hearing in July 1992, indicated to the applicants that the concept of a supermarket at this location appeared to make sense, on a preliminary basis, then that amounts to prejudgment.
Bearing in mind the purpose of the preliminary hearing, that is to advise the prospective applicant as to whether the concept appeared to the Council to be either sensible on the one hand, or foolhardy and inappropriate on CT Page 5045 the other hand, so as to protect an applicant from the extreme expense in cost and in effort, it is difficult to understand what the plaintiffs expect of the Council. If it is proposed that the Council should have said nothing so as to avoid any possible claim of prejudgment then the preliminary hearing would be meaningless and a waste of the time of all concerned. The preliminary hearing determined nothing more than the fact that the Council was prepared to listen to a proposal which on its face did not appear to be frivolous or lacking in common sense as to the proposed use for this site.
The fact that some of the members of the Commission felt that another supermarket in the community would not be harmful to the community, and could be beneficial to the community is not tantamount to prejudgment of an application. The law has long recognized that the existence of competing private enterprise facilities are in the public interest. It is the exclusion of competition rather than the acceptance of competition which is detrimental to the public interest.
It is the nature of public service that persons who sit on local boards are persons who are concerned about the communities to which they volunteer their services. A person who has no interest in, no care for the affairs of the community, would be of little or no service in accomplishing a proper and concerned administration of the affairs of administrative or legislative boards or councils which serve the community.
"We have held that `the law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true.'"Cioffoletti v. Planning Zoning Commission, 209 Conn. 544,555 (1989).
The plaintiffs produced by subpoena, and the Court heard the testimony of the summoned members of the Council; members Monaco, Dufford, Goggens, Stevens and Low. Each of the Commissioners affirmed, and the Court credits their testimony, that they approached the hearings with and maintained a determination not to make their individual decision until after hearing all of the evidence at the CT Page 5046 public hearings. The Court determines from the evidence that the decision of the Council was not the product of any predetermination by the members of the Council.
As to the claim of ex parte communications. The only contact or discussion between any member of the Council and any person was a discussion between Commissioner Lowe and Mr. Leslie, the Director of Community Development, in assistance in drafting the technical language of a motion to be placed before the Council for the Council's determination of whether the application was to be approved. Mr. Leslie testified that a draft motion is drawn up in all circumstances, is drawn in the affirmative, and is always available to the public for review before the occurrence of the Council's vote. The procedure provides a written format for the Council to accept a proposal in whole, in part, or as modified by deliberation, or to reject the proposal in total. As in every deliberative body a motion sets the issues but does not predetermine them. The drafting of a motion does not imply consent to the motion, in whole or in part.
The final deliberations of the Council at the end of the hearings consist of some twenty-four transcript pages of deliberation and discussion on the motion to approve, and amendments thereto, including amendments which were then proposed by Council member Lowe with varying degrees of success. It is obvious that Lowe was not speaking for herself or for any other member of the Council in assisting on the original drawing up of the wording of the motion by Mr. Leslie.
The Council members did not speak with each other, except as on the record at the public hearings, nor did they speak with anyone else prior to their deliberations, other than the above contact with Mr. Leslie. The Commission is entitled to the assistance of Mr. Leslie in drafting a technically proper motion for consideration by the Council. See Yurdin v. Town Plan Zoning Commission,145 Conn. 416, 421 (1958). There is strong presumption of regularity in the proceedings of a body such as a municipal town council. See Murach v. Planning Zoning Commission,196 Conn. 192, 205 (1985). There is no indication in the record, or in the evidence at trial, to indicate that Councilman Lowe's conferring with Mr. Leslie as to having CT Page 5047 a technically correct motion for the Council's consideration affected either her vote or the vote of the other Council members. Murach v. Zoning Commission, supra, p. 206.
The active participation of the Council members in the deliberations, resulting in passage by a 7-2 vote, clearly reflects the deliberate, careful and independent determination of each of the members of the Council based upon the extensive volume of information furnished to the Council by the proponents and opponents in three extensive public hearing sessions. The claim of predetermination is without merit.
Other Matters set forth in the Complaint and Appeal.
The plaintiff initially set forth twelve reasons for appeal in the Complaint. As briefed, the claims pursued are determined in this decision. Matters originally set forth in the complaint but not briefed consisted of the following; against the weight of the evidence; failure to satisfy statutory criteria; violation of standards; reasons given not supported by the record; failure to satisfy standards of the regulations; failure to give proper consideration to the plaintiff's evidence. These claims were not brief or pressed as issues in this appeal, except as may have been incorporated in the issues briefed and decided by the Court. Matters which are not briefed beyond the mere statement of a claim in the appeal complaint are considered abandoned. See State v.Ramsundar. 204 Conn. 4, 16 (1987). The Court, in reviewing the record, can see no support in the record which would have substantiated the claims which were not briefed and hence abandoned.
The plaintiff's reply brief concludes with an assertion that the proceedings "lacked fundamental fairness necessary to a lawful decision." The Court, in reviewing the record, concludes that all interested persons were given ample opportunity to fully express their opinions, to critique, and to present evidence in this matter. The fact of disappointment in the outcome, and whatever feelings which that may generate, does not equate to the concept of unfairness in the proceedings. CT Page 5048
The burden of proof in reversing the decision of an administrative board or agency is upon the plaintiff.Goldreyer v. Board of Zoning Appeals, 144 Conn. 641, 646
(1957). The Court cannot substitute its judgment for that of the Town Council in the zoning matter when the issues are debatable and when facts fairly and reasonably support the decision of the Council. Kutcher v. Town Planning Zoning Commission, 138 Conn. 705, 709 (1952).
For the reasons set forth herein the Court affirms the decision of the Glastonbury Town Council. The appeal is accordingly dismissed.
L. Paul Sullivan, J.