[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
The plaintiffs, Kenneth Notestine, Edward Sordellini, Michele Sordellini, Daniel H. Ustach and Mary Ann Ustach, have filed the present action appealing a decision of the defendant, Farmington Town Plan and Zoning Commission (hereinafter, "the Commission") granting a zone change and site plan permit to the defendant Carrier Enterprises, Inc. (hereinafter, "Carrier") to build a 34 unit apartment building on a 4.07 acre parcel on the northerly side of Scott Swamp Road (Route 6) in Farmington, Connecticut.
The application was one of many filed by Carrier to build multiple family housing under the provisions of General Statutes § 8-30g, the Affordable Housing Appeals Act.[1] Carrier filed its first application in March, 1992, withdrew it and refiled on May 9, 1992 seeking both a zone change to AH (affordable housing) and site plan approval to build a 52 unit apartment complex on the western half of the property. That proposal was denied on August 5, 1992 and pursuant to the provisions of General Statutes § 8-30g(d), Carrier filed a modified application on August 17, 1992 seeking to build a 41 unit complex consisting of a 25 unit building on the western part of the property and a 16 unit building on the eastern half of the property. The Commission denied this application and Carrier appealed to this court, Carrier Enterprises, Inc.v. Farmington Town Plan and Zoning Commission, CV92-0518705S. CT Page 6087 Pursuant to an order of this court, this appeal was to be heard with the present appeal; however, at trial, on May 18, 1995, Carrier withdrew the appeal.
On November 25, 1992, while the above-mentioned appeals were pending, Carrier submitted its fourth application seeking to build a 41 unit complex on the western portion of the property. The proposal was approved, with conditions, on May 29, 1993, and certain neighbors, including some of the plaintiffs herein, appealed to the court, Sordellini v.Farmington Town Plan and Zoning Commission, CV93-0524319S. This appeal was sustained as Carrier had failed to file a copy of the proposed zone boundaries with the town clerk as required by General Statutes § 8-3(a).[2] Carrier then filed the same application, the subject of this appeal, on August 18, 1993. Again, it sought to construct a 41 unit apartment complex in a L-shaped building. The public hearing commenced on October 12, 1993 and was continued to November 8, 1993, then to November 29, 1993 and finally to December 6, 1993. The Commission approved the applications on January 10, 1994, subject to certain conditions, including the elimination of seven units. While Carrier did not appeal, the plaintiffs, abutting neighbors on Brookshire Lane, did.
 II. A.
At the hearing, the parties stipulated that the properties of the plaintiffs Edward and Michele Sordellini at 15 Brookshire Lane, and Daniel H. and Mary Ann Ustach at 7 Brookshire Lane, were within one hundred feet of the Carrier parcel. This court accordingly found them statutorily aggrieved. General Statutes § 8-8. These plaintiffs, along with others, live along the road which abuts the parcel.
As Kenneth Notestine's property at 23 Brookshire Lane was beyond the one hundred foot line, this court heard testimony concerning classical aggrievement. Mr. Notestine testified that his property (which he owns jointly with his wife) is within 300 feet of the Carrier property. He indicated that the proposed complex will be visible for approximately one-half the year, that it will cause 30% depreciation in the value of his property, will cause traffic congestion and increase the number of people in the area. The test for CT Page 6088 classical aggrievement is two-fold:
 First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.
Walls v. Planning Zoning Commission, 176 Conn. 475, 477-8
(1979).
The plaintiff testified that based on the appraisal reports by Russell Hunter, his property would decrease in value by approximately 30 per cent. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Hall v. Planning Commission,181 Conn. 442, 445 (1980), citing O'Leary v. McGuinness, 140 Conn. 80,83 (1953). Depreciation in value of property can establish aggrievement, Puskarz v. Zoning Board of Appeals,155 Conn. 360, 366 (1967), and this court therefore finds Mr. Notestine aggrieved.
 B.
Carrier's applications sought both a change of zone and a site plan permit. As such, the Commission acted in both a legislative, Kaufman v. Zoning Commission, 232 Conn. 122, 153
(1995); West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 498, 505 n. 10 (1994); Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989), and administrative, Wasicki v. Zoning Board, 163 Conn. 166, 171
(1972), capacity. This appeal initially challenged both decisions. At the hearing, the plaintiffs orally withdrew the challenge to the legislative decision of the zone change to AH affordable housing. This court must therefore review the administrative action in approving the site plan. "Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly CT Page 6089 permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." (Citations omitted). Housatonic Terminal Corporation v.Planning Zoning Board, 168 Conn. 304, 307 (1975) citingA. P. W. Holding Corporation v. Planning Zoning Board,167 Conn. 182, 185 (1974); Fuller, Land Use Law and Practice § 33.4. Moreover, where a zoning authority has stated its reasons, "the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations."Goldberg v. Zoning Commission, 173 Conn. 23, 25-26 (1977).
The Commission argues that the standard of review for this case and this situation, i.e. an appeal by a non-developer from the approval of an affordable housing application, requires a slightly different analysis. "The affordable housing land use appeals act was enacted to deal with the particular problem of the lack of affordable housing in Connecticut." Wisniowski v. Planning Commission, 37 Conn. App. 303,314 (1995). Thus, a denial of such an application will only be sustained if the Commission proves, based on the evidence in the record, that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. General Statutes § 8-30g(c).
This burden switching mechanism applies, of course, where a commission denies an affordable housing application. The appeals procedure thus only contemplates two parties: the applicant and a commission. Nevertheless, in a number of circumstances there are other parties: abutting, statutorily aggrieved property owners, such as the plaintiffs Sordellini or Ustach; classically aggrieved property owners, such as the plaintiff Notestine; or combinations thereof, including property or homeowners' associations. They, of course, may seek to intervene (where an affordable housing application has been denied and appealed by a developer) in the hope of "assisting" a commission in showing that it has met the 8-30g(c) standards; see, United Progress, Inc. D/B/A HarborCT Page 6090Point Associates v. Borough of Stonington Planning ZoningCommission, 1994 Ct. Sup. 2306 ___ CSCR ___; CreativeDevelopment for Colchester, Inc. v. Colchester Zoning Planning Commission, CV91-0392513, Judicial District Hartford-New Britain at Hartford (February 5, 1992) or like here, where an application has been granted, appeal and seek to have the decision reversed.[3]
In those cases where they are assisting a commission in the defense of a denial, their role is somewhat merged with that of the commission. However, where they are seeking to reverse a commission's approval, their burden must be different from that in a traditional appeal as the commission's standard of review is different from that in a traditional appeal. For example, a commission could deny a site plan or special permit application in a traditional case because of the applicant's simple failure to comply with a pertinent bulk regulation such as drainage, landscaping, setback, height, etc. Such a denial would presumably be upheld. Housatonic Terminal Corporation v. Planning ZoningBoard, supra. In an affordable housing application, however, a denial based on that failure might not be sustained because the commission must also satisfy the further tests, as described above, that the denial is necessary to protect public interests . . ., that the public interests outweigh the need for affordable housing, etc. General Statutes § 8-30g(c). Thus, it would thwart the purposes of the affordable housing legislation if, after a commission approved a proposal utilizing the § 8-30g(c) requirements, a person or entity opposing the approval could seek reversal using a traditional argument. As noted by the Appellate Court in Wisniowski,
supra, "[s]ection 8-30g is not part of the traditional land use statutory scheme . . . . Section 8-30g does not allow a commission to use its traditional zoning regulations to justify a denial of an affordable housing application but rather forces the commission to satisfy the statutory burden of proof." Id., 317. Accordingly, the non-developer plaintiff in challenging an affordable housing approval must meet a higher burden.
 C.
The plaintiffs have alleged that the commission violated its regulations in approving the site plan application. Each allegation will be addressed. CT Page 6091
1.
The plaintiffs first allege that the proposal is out of character with the neighborhood.[4] Farmington's affordable housing zone is a floating zone concept which, with certain exceptions and conditions, can "land" anywhere in town. It is legislatively deemed compatible. See, Sheridan v. PlanningBoard, 159 Conn. 1, 16 (1969).
Both Carrier and the plaintiffs introduced testimony by appraisers as to the effect of the proposal on the Brookshire residences. The studies are, as expected, diametrically opposed with Carrier's study indicating no loss of value and the plaintiffs' showing a 30 per cent decrease. The court does note that the proposed development is sited in the westerly portion of the parcel leaving the easterly side, near the Brookshire Lane houses, open. Moreover, the proposal, as totally affordable, has a density of 8.4 units, when under the regulations, it could be as high as 13 units per acre. While this surely gives no great solace to the plaintiffs, who are concerned with the impact of this 34 unit, 3 story complex "in their backyard," it does reflect the evolution of the development plans as reflected in the application. It is certainly true that this development is not a single family home proposal. Yet, as noted by the applicant, not only does the overall area contain mixed uses, the parcel allowed varied uses with its three former zones (R-11, B-1 and R-40) prior to the zone change. There are several zones within one half mile of the property and several uses including, but not limited to, a golf course, college, restaurants, commercial strip plazas, a bank, condominiums and residential houses. The legislative determination made in approving a zone change is clearly one for the Commission and one which in a traditional appeal — let alone an affordable housing appeal — is subject to wide and liberal discretion. First Hartford RealtyCorporation v. Plan Zoning Commission, 165 Conn. 533, 549
(1973). "Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the Commission acted arbitrarily or illegally." Id.
The Commission is certainly free to decide which appraiser it believes and which report it gives the most weight. Kaufman, supra, 232 Conn. 156; Manor DevelopmentCT Page 6092Corporation v. Conservation Commission, 180 Conn. 692, 697
(1980). There is no indication the Commission acted arbitrarily or illegally.
2.
The next issue, a subpart of the first, is that the proposal is not consistent with the plan of development. This court first notes that the plan of development was not included in the record and accordingly it is precluded from reviewing this issue. See, State v. Vass, 191 Conn. 604, 621
(1983). Additionally, however, our Supreme Court has stated that the plan of development is only an advisory document.Lathrop v. Planning Zoning Commission, 164 Conn. 215, 223
(1973).[5] This court notes that the Commission did state its findings of consistency with the town's zoning regulations, i.e. the comprehensive plan. Lebanon v. Woods, 153 Conn. 182,188 (1965). (Return Item 22).
3.
The plaintiffs next claim that the applicants failed to comply with certain portions of the applicable zoning regulations. They first argue that the building violates Art. II.25.E.7 which states that no building may exceed 160 feet in length. (Return Item 27, p. 64). Carrier's proposal has an L-shaped building with two wings: one easterly, approximately 40 feet and the other westerly, 158.75 feet, set at 90 degrees to one another. The Commission interprets its regulations to allow this construction design and this court believes it should defer to this factual interpretation. See Federich v.Zoning Board of Appeals, 178 Conn. 610, 616 (1979); Clark v.Town Council, 145 Conn. 476, 485 (1958).
4.
The plaintiffs next argue that the proposal is deficient because a landscape plan was not submitted with this application and thus it violates Art. IV, § 13. (Return Item 27, pp. 93-96). The plaintiffs concede that the application plans do include a sheet L-1, a landscape plan, but they argue that it is for a previous application and thus does not correspond to the 41 unit proposal. (Return Item 25). The Commission posits that the plans do show the landscaping for the development: the building and the parking on the western CT Page 6093 part of the property. The Commission has recognized that as a result of the modifications, however, a new plan must be filed. (Return Items 3; 23). As the parking area has been deleted from the eastern portion, the plans are obviously inaccurate.
As discussed earlier, this deficiency, in and of itself, would not necessarily be a sufficient reason to deny an affordable housing application. In this case, the error is not significant as, at the hearing, the applicant's landscape architect discussed the proposed landscaping. (Return Item 28, pp. 12, 13, 23, 24, 46). Moreover, in a letter from the applicant to the Commission introduced at the last public hearing, the applicant acknowledged the deficiency but noted any additional plantings would be of "equivalent quality". (Return Item 21). This court does expect that the applicant will correct the deficiency.
5.
The plaintiffs next argue that the storm drainage system, including the sedimentation and erosion control plan, is not adequate to protect the subject and neighboring properties. Similar to the appraisal testimony, the Commission had submissions from Carrier's engineers and the engineer retained by the plaintiffs. Again, the Commission is entitled to believe whichever expert it chooses. Kaufman v. ZoningCommission, supra, 232 Conn. 156. This court notes, moreover, that the plaintiffs' engineer, Michael Bartos, never testified at the hearings and further, that the town engineer approved the drainage plans. (Return Item 19). Again, the plaintiffs' argument is not persuasive.
6.
Connected to the argument that the storm drainage plans are inadequate, is the plaintiffs' contention that the approval was improper because the applicant failed to seek the appropriate review of the inland wetlands commission pursuant to General Statutes § 8-3(g). The relevant portion of this statute states:
 If a site plan application involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the CT Page 6094 applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day such application is filed with the zoning commission. The decision of the zoning commission shall not be rendered on the site plan application until the inland wetlands agency has submitted a report with its final decision. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency.
The term regulated activity is defined in General Statutes § 22a-38(13):
 "Regulated activity" means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40.
The relevant Farmington inland wetlands regulation is essentially, although not exactly, the same. (Return Item 27, p. W-2).
The plaintiffs maintain that as the proposed sedimentation pond to be constructed at the northwest corner of the site will have an outlet to a channel which will eventually lead to a wetland on town owned property, the applicant is conducting a regulated activity. This Court does not agree. The exhibits indicate that the outlet discharges to a nonwetland soil (Cheshire) which is approximately 600 relatively level feet from a watercourse. (Return Items 7e, 25).
Moreover, as noted by the applicant and the Commission, the Commission is the inland wetlands agency for the town. Surely one of the purposes of § 8-3g is to insure that the inland wetlands agency is apprised of an application where a regulated activity is proposed. In this case, the Commission was fully aware of the proposal, did not consider it to be a regulated activity and did not require an application.[6] The CT Page 6095 Commission was also advised by the town engineer and the town planner that an inland wetland permit was not required. (Return Item 15d).[7] More importantly, inasmuch as the outlet does not flow directly into a wetland or watercourse, this court cannot say that the Commission abused its discretion in not requiring an application to be filed.[8]
7.
The plaintiffs' final argument is that in imposing a condition to lower the rear of the building — a condition that they believe cannot be met — the decision is void. See generally, Carpenter v. Planning Zoning Commission,176 Conn. 581, 592 (1979).
This court first notes that Carrier has not challenged this condition and second, that the building as proposed, meets the height regulation. Additionally, this requirement can only benefit the plaintiffs. Nevertheless, as noted by the engineers at the public hearing, certain action can be taken to reduce the height. (Return Item 28, p. 58). This is not a condition over which the applicant has no control and thus the plaintiffs have failed to meet their burden. Id.
 III.
For the above reasons, the appeal is dismissed.
Berger, J.